## CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY v. UNITED STATES.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 329.   Argued March 9, 1911.—Decided May 15, 1911.

Under the Safety Appliance Acts of March 2, 1893, c. 196, 27 Stat. 531, April 1, 1896, c. 87, 29 Stat. 85, and March 2, 1903, c. 976, 32 Stat. 943, there is imposed an absolute duty on the carrier and the penalty cannot be escaped by exercise of reasonable care.

This court in *St. Louis, I. M. & S. Railway Co.* v. *Taylor*, 210 U. S. 281, considered and determined the scope and effect of the Safety Appliance Acts and the degree of care required by the carrier, and the question is not open to further discussion, as this court should not disturb a construction which has been widely accepted and acted upon by the courts.

For this court to give a construction to an act of Congress contrary to one previously given would cause uncertainty if not mischief. in the administration of law in Federal courts, and, having placed an interpretation on the Safety Appliance Acts, this court will adhere thereto until Congress by amendment changes the rule announced in *St. Louis, I. M. & S. Railway Co.* v. *Taylor, supra.*

An action for penalties under the Safety Appliance Acts is a civil, and not a criminal one, and the enforcement of such penalties is not governed by considerations controlling prosecution of criminal offenses.

Congress has unquestioned power to declare an offense and to exclude the elements of knowledge and due diligence from the inquiry as to its commission.

170 Fed. Rep. 556, affirmed.

THE facts, which involve the construction of the Safety Appliance Acts, and the duties and liabilities of carriers to equip their cars with safety appliances, are stated in the opinion.

*Mr. Ralph W. Breckenridge,* with whom *Mr. Charles J. Greene* was on the brief, for petitioner:

The Government cannot recover. It appears not only

that the Railway Company did not know that its cars were defective tested by the act, and there was no intention to offend—but that the company exercised reasonable care to keep its cars repaired. *St. Louis, I. M. & S. Ry. Co.* v. *Taylor*, 210 U. S. 281, does not discuss the liability of railway companies to the Government, whether or not they comply with the terms of the act. Whether or not all that the court said was necessary to a decision of the case then before the court, it was intended to apply only to the relation of master and servant, and ought not to be interpreted otherwise nor in any event applied to other situations.

The Safety Appliance Acts do not disclose the intent of Congress to make railroad companies insurers of the safety of their employés.

Section 8 creates a new relationship as between master and servant only to the extent that a servant is not required to assume a defective condition of equipment when known to him, as a hazard of his employment. Congress intended that the right of recovery for an injury should depend upon the negligence of the railroad company and the freedom from negligence of the injured person.

In this case no injury had befallen anyone, there was absence of intent, and the offense was established by construction.

Although a penalty can be recovered in a civil action, *Hepner* v. *United States*, 213 U. S. 103,—if the statute upon which it is grounded is a penal statute, the defendant is entitled to have actual ignorance of the defective conditions, exercise of reasonable care to prevent the same, and absence of intention to violate that statute, considered as a defense.

There was no indictment, but the court treated the petition to recover the penalty as though it were an information authorized by the criminal procedure in the Federal courts, and it is not open to the United States, as a litigant,

to claim any advantage based upon such a technical consideration as that involved in the mere form of the action it selected. To select a form of procedure that forecloses a defense is abhorrent to the sense of justice. *Huntington* v. *Attrill*, 146 U. S. 657, 668.

A penalty is none the less a penalty and the statute which imposes it is none the less a penal or criminal statute because the penalty may be recovered in an action which is civil in its form. The difference between the civil and criminal prosecution of corporations is slight. *United States* v. *Illinois Central Ry. Co.*, 156 Fed. Rep. 182; *Ex parte Kentucky* v. *Dennison*, 24 How. 66; *United States* v. *Reisinger*, 128 U. S. 308; *Boyd* v. *United States*, 116 U. S. 616, 634; *Iowa* v. *C., B. & Q. R. R. Co.*, 37 Fed. Rep. 497; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265; *Grafton* v. *United States*, 206 U. S. 333, 353; *Moore* v. *State of Illinois*, 14 How. 13; *Shick* v. *United States*, 195 U. S. 65.

The construction of the Safety Appliance Act, pursuant to which penalties have been adjudged against the Railway Company, violates the social compact. *United States* v. *Wiltberger*, 5 Wheat. 77, 95; *United States* v. *Lacher*, 134 U. S. 624.

There can be no constructive offenses. *Todd* v. *United States*, 158 U. S. 278, 282; *Calder* v. *Bull*, 3 Dallas, 386; The Federalist, No. 84; *McVeigh* v. *United States*, 11 Wall. 259, 267; *Loan Association* v. *Topeka*, 20 Wall. 655, 662.

No tyranny could be more intolerable and hateful and no power more despotic than the punishment of an American citizen or corporation for something which the accused did not know had occurred, and was using diligence to avoid.

For the history of the original act adopting safety appliances on railroads engaged in interstate commerce, see Report House Committee on Interstate and Foreign Commerce, 52nd Congress, to which had been referred sundry bills on the subject, on July 8, 1892 (Vol. 23, Cong. Rec.

pt. 6, p. 5925); H. R. bill 9350, with recommendation that it pass. The committee bill was passed under suspension of the rules without debate. 23 Cong. Rec. 5925, 5927. After the initial proceedings had in the House on July 9, 1892, H. R. bill 9350, was referred to the Senate Committee on Interstate Commerce, 23 Cong. Rec. 5932, July 21, and the Senate Committee reported the bill with a substitute. Rec. 6483. The report of the Senate Committee was presented July 22, 1892, p. 6552, and appears in Vol. 24, pp. 1246, 1247, and see address on February 6, of Senator Cullom, chairman of the Senate Committee on Interstate Commerce, 24 Cong. Rec. 1247, 1248, 1249, 1273, 1275, 1287; see also remarks of Senator (now Mr. Chief Justice White), 24 Cong. Rec. 1277, 1280, 1284; and of Senator Hoar, 24 Cong. Rec. 1287–1288.

The substitute bill of the Senate Committee passed the Senate February 11, 1893, 24 Cong. Rec. 1486; February 27, 1893, the House concurred in the Senate amendments (Cong. Rec., Vol. 24, pp. 2247, 2248); and the bill received executive approval on March 2, 1893 (Cong. Rec., Vol. 24, p. 2457).

If the Safety Appliance Act prescribes a rule or regulation for cars that were equipped as the law required at the commencement of their journey and which were inspected for defects in their equipment at the repair station last preceding the one where defects were found, and which were crippled by unavoidable accident en route, such regulation rests upon judicial construction and judicial legislation, for it cannot be deduced from the arguments of the distinguished gentlemen who took part in the discussion in the House and Senate upon this act, prior to its passage.

There can be no crime or offense where there is no injury. In none of the cases complained of was any injury suffered by any person. 2 Wilson's Works (Andrews' ed.), 338. No criminal offense can be committed where the intention to do or permit the wrongful act is wanting. 1 Bishop on

Criminal Law, 5th ed., § 345; *People* v. *White,* 34 California, 183; *Furley* v. *Chicago, M. & St. P. Ry. Co.,* 90 Iowa, 146; *Schmidt* v. *State,* 78 Indiana, 41; *Hunter* v. *State,* 101 Indiana, 241; McLain on Criminal Law, § 128; *United States* v. *Illinois Central R. R. Co.,* 156 Fed. Rep. 182; *S. C.,* 170 Fed. Rep. 542; *Pettibone* v. *United States,* 148 U. S. 197; *Reynolds* v. *United States,* 98 U. S. 145.

One cannot be convicted of a crime based upon an accidental occurrence. *Barlow* v. *United States,* 7 Pet. 404; *United States* v. *Hess,* 124 U. S. 483; *United States* v. *Cruikshank,* 92 U. S. 542; *Davis* v. *United States,* 160 U. S. 469, 484; *Felton* v. *United States,* 96 U. S. 699.

Even in cases involving no moral turpitude, there must be an intention to do the act which constitutes a violation of law. *Armour Packing Co.* v. *United States,* 153 Fed. Rep. 1; *S. C.,* 209 U. S. 56, 85.

No question is raised here of a mistake of law; there was not only no purpose to do or permit the prohibited thing, but an intent not to do it, and an honest effort by the exercise of reasonable diligence, to obey the law, and prevent the very conditions which occurred, and which were in fact incidental to and accidents of, the movement of the cars.

*Mr. Assistant Attorney General Fowler,* with whom *Mr. Barton Corneau,* special assistant to the Attorney General, was on the brief, for the United States:

The act of March 2, 1893 (c. 196, 27 Stat. 530), as amended by the act of March 2, 1903 (c. 976, 32 Stat. 943), makes it unlawful for any car to be hauled on a railroad engaged in interstate commerce, with safety appliances not in a usable condition; and § 6 of said former act, which provides for the recovery by the United States of a penalty of $100 for a violation of any of the provisions of the act, likewise extends to the maintenance of appliances, and in case of violation makes the liability of the company for such penalty absolute, regardless of whether the statute

was violated with the knowledge of any employé of the company or not.

The provisions of the statute other than § 6 require that the appliances be maintained in a usable condition, and said section should be applied to them as thus construed. 36 Cyc. 1183; 2 Lewis, Suth. Stat. Con., 2d ed., § 337; Endlich, Inter. Stat., § 332; *United States* v. *Keitel,* 211 U. S. 370, 392.

Section 6 should not within itself be strictly construed. *United States* v. *Wiltberger,* 5 Wheat. 76; *United States* v. *Lacher,* 134 U. S. 624, 628.

When a penal statute merely imposes a pecuniary pen-. alty it is construed less strictly than where the rule was invoked *in favorem vitæ.* Endlich, Inter. Stat., § 334; 2 Lewis, Suth. Stat. Con., § 518.

When the section is remedial in its nature, as well as penal, it is to be liberally construed to effect the object which Congress had in view when making it. *National Bank* v. *Dearing,* 91 U. S. 29, 35; *Ordway* v. *Central Nat. Bank,* 47 Maryland, 217, 241.

Section 6 certainly does not, by express language, except a violation of the statute which was not intentionally or knowingly done, nor is there anything therein which can permit such an exception by implication.

There is no general principle of statutory construction which warrants, or will permit, the reading into § 6 of the statute the requirement that the violation of the other provisions shall be intentionally or knowingly done, in order to create the liability to the United States provided for in said section. This proceeding is a civil one. *Hepner* v. *United States,* 213 U. S. 103; *Oceanic Navigation Co.* v. *Stranahan,* 214 U. S. 320.

This is not a penal statute, as it does not impose punishment for an offense committed against the State which the executive has the power to pardon. *Huntington* v. *Attrill,* 146 U. S. 657, 667.

One can commit a crime or an offense even though he inflict no injury thereby upon anyone.

Offenses created by statute can be committed, though the intention to commit the wrongful act, and the knowledge of such act, be wanting. *Shevlin-Carpenter Co.* v. *State of Minnesota*, 218 U. S. 57; *Regina* v. *Woodrow*, 15 Meeson & Welsby, 403, 417; *Commonwealth* v. *Emmons*, 98 Massachusetts, 6, 8; *People* v. *Snowberger*, 113 Michigan, 86; *People* v. *Roby*, 52 Michigan, 577; *Edgar* v. *The State*, 37 Arkansas, 219, 223; *Crampton* v. *The State*, 37 Arkansas, 108; *State* v. *Sase*, 6 So. Dak. 212; *State* v. *Baltimore & S. Steam Co.*, 13 Maryland, 181, 187, 188; *Halstead* v. *State*, 41 N. J. Law, 552, 591; 3 Greenleaf, 16th ed., § 21; Wharton on Crim. Law, 8th ed., § 88.

Knowledge is not an essential ingredient of a violation of the United States revenue laws, unless the statute either expressly or by implication requires knowledge. *United States* v. *Bayaud*, 16 Fed. Rep. 376, 384, 385; *United States* v. *Adler*, Fed. Case, No. 14,424; *Contra*, 1 Bishop, New Criminal Law, 8th ed., §§ 287, 291, and note 6 to § 303*a*. But see § 291, par. 2.

The decisions of this court cited by counsel for plaintiff in error do not support their contention. See *Barlow* v. *United States*, 7 Pet. 404; *Felton* v. *United States*, 96 U. S. 699, 700, 702; *Reynolds* v. *United States*, 98 U. S. 145; *Commonwealth* v. *Thomas*, 11 Allen, 33; *United States* v. *Hess*, 124 U. S. 483, 486.

The general policy that Congress had in view in passing this act, excludes the idea that it intended that knowledge of or intent to violate the provisions of the act should be necessary to create liability; and in the absence of a universal rule of construction, the provisions of § 6 of the act should be enforced as written.

With the exceptions of the Circuit Court of Appeals, Sixth Circuit, in the case of *United States* v. *Illinois Central Railroad Co.* (170 Fed. Rep. 542), of Judge Evans in

the trial court in the same case (156 Fed. Rep. 182), of
Judge Sater in charging the jury in *United States* v. *Balti-
more & Ohio R. R. Co.* (Appx. Kent's Dig. of Decisions
under the Federal Safety Appliance Act, p. 271), and of
Judge Cochran in charging the jury in *United States* v. *Bal-
timore & Ohio R. R. Co.* (Appx. Kent's Dig., 277, 282), all
the Federal courts who have had before them actions
brought under § 6 of this act to recover penalties have
held that the statute imposes absolute liability upon the
companies to not only equip the cars with safety appli-
ances, but to keep such appliances in good repair, and that
to haul a car with any of its appliances out of repair ren-
dered the company liable for the prescribed penalty.

The following are the cases decided by Federal courts
in which the statute has been so applied in penal cases:
*United States* v. *Denver & R. G. R. Co.,* 163 Fed. Rep. 519;
*Chicago, M. & S. P. R. Co.* v. *United States,* 165 Fed. Rep.
423; *United States* v. *Southern Pac. Co.,* 169 Fed. Rep. 407;
*Chicago, B. & Q. R. Co.* v. *United States,* 170 Fed. Rep. 556,
557; *Atchison, T. & S. F. R. Co.* v. *United States* (two
cases), 172 Fed. Rep. 1021; *Atlantic Coast Line R. Co.* v.
*United States,* 168 Fed. Rep. 175; *Norfolk & Western R.
Co.* v. *United States,* 177 Fed. Rep. 623; *United States*
v. *Phila. & R. R. Co.,* 162 Fed. Rep. 403; *United States* v.
*Phila. & R. R. Co.,* 162 Fed. Rep. 405; *United States* v.
*Pennsylvania R. Co.,* 162 Fed. Rep. 408; *United States*
v. *Lehigh Valley R. Co.,* 162 Fed. Rep. 410; *United States* v.
*Erie R. Co.,* 166 Fed. Rep. 352; *United States* v. *Wheeling
& L. E. R. Co.,* 167 Fed. Rep. 198; *United States* v. *Atch.,
T. & S. F. R. Co.,* 167 Fed. Rep. 696; *United States* v. *South-
ern Pacific Co.,* 167 Fed. Rep. 699; *United States* v. *Balti-
more & Ohio R. Co.,* 170 Fed. Rep. 456; *United States* v.
*Southern Ry. Co.,* 170 Fed. Rep. 1014; *United States* v.
*Baltimore & Ohio R. Co.,* App. Kent's Dig. 274; *United
States* v. *Atlantic Coast Line,* App. Kent's Dig. 267; *United
States* v. *Southern Ry. Co.,* App. Kent's Dig. 270; *United*

*States* v. *Pennsylvania R. Co.*, App. Kent's Dig. 286; *United States* v. *Southern Pacific Co.*, App. Kent's Dig. 288.

Absolute liability for loss or damages, though such loss or damages cannot be avoided by the utmost degree of diligence, has always in certain instances been recognized both at common law and under many statutes. Wood on Master and Servant, 2d ed., § 277; *St. Louis, I. M. & S. R. Co.* v. *Mathews*, 165 U. S. 1; *Jones* v. *Brim*, 165 U. S. 180.

Congress has the constitutional power to impose a penalty for violation of the act, without the presence of knowledge of its violation, or the intent to violate the same. *Shevlin-Carpenter Co.* v. *Minnesota*, 218 U. S. 57, 64, 65, 67, 69.

MR. JUSTICE HARLAN delivered the opinion of the court.

Two separate actions were brought by the Government in the District Court of the United States for the District of Nebraska against the Chicago, Burlington and Quincy Railroad Company, an Iowa corporation engaged as a common carrier in interstate commerce. The object of each action was to recover certain penalties which, the United States alleged, had been incurred by the company for violations, in several specified instances, of the Safety Appliance Acts of Congress. March 2, 1893, c. 196, 27 Stat. 531; April 1, 1896, c. 87, 29 Stat. 85; March 2, 1903, c. 976, 32 Stat. 943. By consent of the parties and by order of court the two actions were consolidated and tried together. At the trial the court directed a verdict of guilty as to each cause of action, and a judgment for $300 was rendered for the Government in one case and for $100 in the other.

By the original act of March 2, 1893 (27 Stat. 531), it was provided that from and after the first day of January, eighteen hundred and ninety-eight, it should be unlawful for any common carrier engaged in moving interstate

traffic by railroad to use on its line any locomotive engine not equipped with a power driving-wheel brake and appliances for operating the train-brake system, or, after that date, to run any train in such traffic that had not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose.

The second section provided "that on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." Section 6, as amended April 1, 1896, c. 87, 29 Stat. 85, provided that any such common carrier using a locomotive engine, running a train, or hauling or permitting to be hauled or used on its line any car in violation of any of the provisions of this act "shall be liable to a penalty of one hundred dollars for each and every such violation, to be recovered in a suit or suits to be brought by the United States district attorney in the District Court of the United States having jurisdiction in the locality where such violation shall have been committed. . . . *Provided*, That nothing in this act contained shall apply to trains composed of four-wheel cars or to trains composed of eight-wheel standard logging cars where the height of such car from top of rail to center of coupling does not exceed twenty-five inches, or to locomotives used in hauling such trains when such cars or locomotives are exclusively used for the transportation of logs."

The eighth section is in these words: "That any employé of any such common carrier who may be injured by any locomotive, car, or train in use contrary to the provision of this act shall not be deemed thereby to have assumed the

risk thereby occasioned, although continuing in the em-- ployment of such carrier after the unlawful use of such. locomotive, car, or train had been brought to his knowl- edge."

After referring to various cases holding that the omission of Congress to make knowledge and diligence on the part of the carrier ingredients of the act condemned, the trial court said: "Its omission was intentional, in order that this statute might induce such a high degree of care and diligence on the part of the railway company as to neces- sitate a change in the manner of inspecting appliances, and to protect the lives and the safety of its employés, pro- vided the accident occurs from a defective appliance such as is designated in this act. And for these reasons the jury will be peremptorily instructed to return a verdict for the Government on each count of the indictment." In the Circuit Court of Appeals that judgment was affirmed. In the course of its opinion the latter court said: "The. cause is simplified by the concession of counsel for the Railway Company that there was evidence tending to prove the defective condition of each of the four cars as charged, and that they were all being used at the time stated in the several counts in hauling interstate commerce or as a part of a train containing other cars which were doing so. The sole contention is that, notwithstanding this concession, inasmuch as it appears by the proof that defendant did not know its cars were out of repair and had no actual intention at the time to violate the law, but on the contrary had exercised reasonable care to keep them in repair by the usual inspections, it is not liable in this. action. Learned counsel concede, what is undoubtedly true, that sustaining their contention involves a reversal of the doctrine unanimously declared by this court [Cir- cuit Court of Appeals for Eighth Circuit] in *United States v. Atchison, T. & S. R. Ry. Co.,* 163 Fed. Rep. 517, and *United States* v. *Denver & Rio Grande R. R. Co.,* 163 Fed.

Rep. 519, and a disregard of what they call the dictum of
the Supreme Court in *St. Louis, I. M. & S. Ry. Co.* v.
*Taylor*, 210 U. S. 281; and they accordingly invite us to
enter upon a reconsideration of the questions so decided.
It was held by us, and in our opinion it was necessarily
held by the Supreme Court in the *Taylor Case*, that the
duty of railroads under the statute in question is an abso-
lute duty and not one which is discharged by the exercise
of reasonable care and diligence.  Since those cases were
decided, this court in the case of *Chi., Mil. & St. P. Ry. Co.*
v. *United States*, 165 Fed. Rep. 423, has again approved of
their doctrine, and the Circuit Court of Appeals for the
Fourth Circuit in the case of *Atlantic Coast Line R. R. Co.*
v. *United States*, decided March 1, 1909, 168 Fed. Rep. 175,
in considering this question, made a review of pertinent
authorities, and particularly of the cases of this court as
well as of the *Taylor Case*, and in an exhaustive opinion
reached the same conclusion that we did.  . . .  The act
made it unlawful for railroads to use cars not equipped as
therein provided and thereby imposed a duty upon rail-
road companies to equip cars accordingly.  This was by
clear and unequivocal language of the lawmaker made an
absolute duty not dependable upon the exercise of diligence
or the existence of any wrong intent on the part of the
railroad companies.  .Whether a defendant carrier knew its
cars were out of order or not is immaterial.  Its duty was
to know they were in order and kept in order at all times.
(Cases *supra*.)  A breach of this duty, like the breach of
most civil duties, naturally entailed a liability, and Con-
gress fixed the liability, not as a punishment for a criminal
offense, but as a civil consequence, so far as the Govern-
ment was concerned, of a failure to perform the duty which,
in the opinion of Congress, the public weal demanded
should be performed by railroad companies."   170 Fed.
Rep. 556.
    Does the act of Congress in question impose on an inter-

state carrier an absolute duty to see to it that no car is hauled or permitted to be hauled or used on its line unless it be equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars? Can the carrier engaged in moving interstate traffic escape the penalty prescribed for a violation of the act, in the particulars just mentioned, by showing that it had exercised reasonable care in equipping its cars with the required coupler, and had used due diligence to ascertain, from time to time, whether such cars were properly equipped?

The court below held that an explicit answer to the above questions was to be found in *St. Louis, I. M. & S. Ry. Co.* v. *Taylor*, 210 U. S. 281. The Government insists that such was the effect of the decision of that case. The defendant contends that the questions here presented were not necessary to be decided in the *Taylor Case*, and that an examination of them now is not precluded by anything involved in that case.

Under the circumstances and because of the importance of the questions raised, it seems appropriate, if not necessary, to state the origin of the *Taylor Case* and the grounds upon which this court proceeded.

Neal, as administrator of the estate of Taylor, brought an action in an Arkansas court against the St. Louis, Iron Mountain & Southern Railway Co. to recover damages for the death of Taylor, one of its employés, whose death, it was alleged, had been caused by the company's failure to provide certain safety appliances required by the act of Congress. Pursuant to the direction of the state court a verdict was returned for the railway company. The case was taken to the Supreme Court of Arkansas, and that court decided that the act of Congress departed from or supplanted that general rule obtaining between master and servant, which protected the master, when charged with the failure to have safe machinery for the servant,

if it appeared that the master used reasonable care and diligence in providing suitable and safe appliances. "But," that court said, "it is different where the injury is caused by a violation of a statutory duty on the part of the master. The statute upon which this case is based does not say that the company shall use ordinary care to provide its cars with drawbars of a certain height, but it imposes as a positive duty upon railway companies that they shall do so. . . . The act of Congress requiring railroad companies to equip their cars with drawbars of standard and uniform heights specifically provides that an employé injured by the failure of a company to comply with the act shall not be deemed to have assumed the risk by reason of his knowledge that the company had not complied with the statute, and there is no question of assumed risk presented." The Supreme Court of the State was therefore of opinion that the trial court had not correctly interpreted the act of Congress in respect of the nature of the duty imposed by the statute on the railroad company, and directed the case to be sent back for a new trial. *Neal v. St. Louis, I. M. & S. Ry. Co.,* 71 Arkansas, 445, 450. The second trial was conducted on the basis of the principles announced by the Supreme Court of Arkansas in that case. At the second trial the railway company asked the court to instruct, but the court refused to instruct, the jury as follows: "The court tells you that if you find from the evidence in this case the defendant equipped all its cars with uniform and standard height drawbars when such cars are first built and turned out of the shops, then the defendant is only bound *to use ordinary care* to maintain such drawbars at the uniform and standard height spoken of in the testimony." This was designated as instruction No. 23, asked by the railway company. It appears at page 126 of the original record, on file in this court, of the *Taylor Case.* At the last trial there was a verdict in the state court against the railway company. The company appealed to the Supreme

Court of Arkansas, where the judgment was affirmed. *St. Louis, I. M. & S. Ry. Co.* v. *Neal,* 83 Arkansas, 591, 598.

The railway company prosecuted a writ of error to this court, and the case is reported as *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 210 U. S. 281. It was assigned by the company for error, and its counsel insisted that the trial court erred in refusing the above instruction, No. 23, and that the Supreme Court of the State erred in not so ruling. (Original record, p. 154.) The reason assigned in support of that view was that "a reasonable construction of the Safety Appliance Act is that if the railroad company equipped all its cars with uniform and standard height drawbars when such cars were first built and turned out of the shops, then that *thereafter* the defendant is only bound to use *ordinary care* to maintain such drawbars at the uniform and standard height mentioned in the testimony." Counsel for the other side contended in the case in 210 U. S. that "under the Safety Appliance Act it is immaterial whether the defendant had notice of the defect or had used ordinary care to prevent this and similar defects from arising," and that "the railroad is liable under the act, unconditionally, for any violation of its provisions"—citing *Carson* v. *Southern Railway,* 194 U. S. 136; *United States* v. *Atlantic Coast Line Railway Co.,* 153 Fed. Rep. 918; *United States* v. *Southern Ry.,* 135 Fed. Rep. 122; *United States* v. *Great Northern Ry. Co.,* 150 Fed. Rep. 229. It is thus seen that whether the act of Congress imposed an absolute duty upon the carrier in the matter of the required safety appliances, or whether knowledge or diligence on its part was an ingredient in the act condemned, was a question distinctly presented here by the assignments of error and by counsel on both sides. This court regarded the question as properly presented on the record, and that its duty was to meet and decide it. Speaking by Mr. Justice Moody, it said: "It is not, and cannot be, disputed that the questions raised by the errors assigned

were seasonably and properly made in the court below, so as to give this court jurisdiction to consider them; so no time need be spent on that." What, then, was held by this court in the *Taylor Case?* Among other things, the court said: "On this state of the evidence the defendant was refused instructions, in substance, that if the defendant furnished cars which were constructed with drawbars of a standard height, and furnished shims to competent inspectors and trainmen, and used reasonable care to keep the drawbars at a reasonable height, it had complied with its statutory duty, and, if the lowering of the drawbar resulted from the failure to use the shims, that was the negligence of a fellow-servant, for which the defendant was not responsible. In deciding the questions thus raised, upon which the courts have differed (*St. Louis & S. F. Ry.* v. *Delk,* 158 Fed. Rep. 931), we need not enter into the wilderness of cases upon the common law duty of the employer to use reasonable care to furnish his employé reasonably safe tools, machinery and appliances, or consider when and how far that duty may be performed by delegating it to suitable persons for whose default the employer is not responsible. In the case before us the liability of the defendant does not grow out of the common law duty of master to servant. The Congress, *not satisfied with the common law duty and its resulting liability,* has prescribed and defined the *duty by statute.* We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the legislature was *to supplant the qualified duty of the common law with an absolute duty deemed by it more just.* If the railroad does, in point of fact,

use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. *They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the lawmaking body.* . . . It is quite conceivable that Congress, contemplating the inevitable hardship of such injuries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to impose their burdens upon those who could measurably control their causes, instead of upon those who are in the main helpless in that regard. Such a policy would be intelligible, and, to say the least, not so unreasonable as to require us to doubt that it was intended, and to seek some unnatural interpretation of common words. We see no error in this part of the case." These views were not new, but were in accord with previous judgments in several cases in the Federal courts. In *United States* v. *Phil. & R. Ry. Co.*, 160 Fed. Rep. 696, 698; *United States* v. *L. & N. R. R. Co.*, 162 Fed. Rep. 185–6; *United States* v. *Chicago, Great Western Ry. Co.*, 162 Fed. Rep. 775, 778.

It cannot then be doubted that this court in the *Taylor Case* considered the scope and effect of the Safety Appliance Act of Congress as directly involved in the questions raised in that case, and it expressly decided that the provision in the second section relating to automatic couplers imposed an absolute duty on each corporation in every case to provide the required couplers on cars used in interstate traffic. It also decided that non-performance of that duty could not be evaded or excused by proof that the corporation had used ordinary care in the selection of proper couplers or reasonable diligence in using them and

ascertaining their condition from time to time. That the *Taylor Case*, as decided by this court, has been so interpreted and acted upon by the Federal courts generally, is entirely clear as appears from the cases cited in the margin.[1]

In *United States* v. *A., T. & S. F. Ry. Co.*, 163 Fed. Rep. 517, Mr. Justice Van Devanter, then Circuit Judge, speaking for the Circuit Court of Appeals, referred to the *Taylor Case* in this court saying: "It is now authoritatively settled that the duty of the railway company in situations where the congressional law is applicable is not that of exercising reasonable care in maintaining the prescribed safety appliance in operative condition, but is absolute. In that case the common-law rules in respect of the exercise of reasonable care by the master and of the nonliability of the master for the negligence of a fellow servant were invoked by the railway company, and were held by the court to be superseded by the statute; . . . While the defective appliance in that case was a drawbar, and not a coupler, and the action was one to recover damages for the death of an employé, and not a penalty, we perceive nothing in these differences which distinguishes that case from this. As respects the nature of the duty placed

---

[1] *United States* v. *Phil. & R. Ry. Co.*, 162 Fed. Rep. 403; *United States* v. *Lehigh Valley R. Co.*, 162 Fed. Rep. 410; *United States* v. *Denver & R. G. R.*, 163 Fed. Rep. 519; *Chicago, M. & St. P. Ry. Co.* v. *United States*, 165 Fed. Rep. 423; *Donegan* v. *Baltimore & N. Y. Ry. Co.*, 165 Fed. Rep. 869; *United States* v. *Erie R. Co.*, 166 Fed. Rep. 352; *United States* v. *Wheeling & L. E. R. Co.*, 167 Fed. Rep. 198, 201; *Atlantic Coast Line R. Co.* v. *United States*, 168 Fed. Rep. 175, 184; *Chicago Junction Ry. Co.* v. *King*, 169 Fed. Rep. 372, 377; *United States* v. *Southern Pac. Co.*, 169 Fed. Rep. 407, 409; *Watson* v. *St. Louis, I. M. & S. Ry. Co.*, 169 Fed. Rep. 942; *Wabash R. Co.* v. *United States*, 172 Fed. Rep. 864; *A., T. & S. F. Ry. Co.* v. *United States*, 172 Fed. Rep. 1021; *Norfolk & W. Ry. Co.* v. *United States*, 177 Fed. Rep. 623; *United States* v. *Illinois Cent. R. Co.*, 177 Fed. Rep. 801; *Johnson* v. *Great Northern Ry. Co.*, 178 Fed. Rep. 646; *Siegel* v. *N. Y. Cent. & H. R. R.*, 178 Fed. Rep. 873.

upon the railway company, § 5, relating to drawbars, is the same as § 2, relating to couplers, and § 6, relating to the penalty, is expressed in terms which embrace every violation of any provision of the preceding sections. Indeed, a survey of the entire statute leaves no room to doubt that all violations thereof are put in the same category, and that whatever properly would be deemed a violation in an action to recover for personal injuries is to be deemed equally a violation in an action to recover a penalty."

In view of these facts, we are unwilling to regard the question as to the meaning and scope of the Safety Appliance Act, so far as it relates to automatic couplers on trains moving in interstate traffic, as open to further discussion here. If the court was wrong in the *Taylor Case* the way is open for such an amendment of the statute as Congress may, in its discretion, deem proper. This court ought not now disturb what has been so widely accepted and acted upon by the courts as having been decided in that case. A contrary course would cause infinite uncertainty, if not mischief, in the administration of the law in the Federal courts. To avoid misapprehension, it is appropriate to say that we are not to be understood as questioning the soundness of the interpretation heretofore placed by this court upon the Safety Appliance Act. We only mean to say that until Congress, by an amendment of the statute changes the rule announced in the *Taylor Case*, this court will adhere to and apply that rule.

The *Taylor Case* was a strictly civil proceeding, being an action by an individual to recover damages for a personal injury alleged to have been caused by the negligence of a corporation; whereas, the present action is to recover a penalty. This difference, it is suggested, will justify a reëxamination, upon principle, of the rule announced in the *Taylor Case*. In effect, the contention is that the present action for a penalty is a criminal prosecution, and

that the defendant cannot be held guilty of a crime when
it had no thought or purpose to commit a crime, and en-
deavored with due diligence to obey the act of Congress.
This contention is unsound, because the present action is
a civil one. It is settled law that "a certain sum, or a sum
which can readily be reduced to a certainty, prescribed
in a statute as a penalty for the violation of law, may be
recovered by civil action, even if it may also be recovered
in a proceeding which is technically criminal." It was so
decided, upon full consideration, in *Hepner* v. *United
States*, 213 U. S. 103, 108. In that case it was also held
that it was competent for the trial court, even though the
action was for a penalty, to direct a verdict for the Gov-
ernment, the court saying that it was "fundamental in
the conduct of civil actions, that the court may withdraw
a case from the jury and direct a verdict, according to the
law if the evidence is uncontradicted and raises only a
question of law." So, in *Oceanic Navigation Co.* v. *Stran-
ahan*, 214 U. S. 320, 337, 338; "The contention that
because the exaction which the statute authorizes the Sec-
retary of Commerce and Labor to impose is a penalty,
therefore its enforcement is necessarily governed by the
rules controlling in the prosecution of criminal offenses, is
clearly without merit, and is not open to discussion." If
the statute upon which the present action is based had ex-
pressly or by implication declared that the penalty pre-
scribed may only be recovered by a criminal proceeding,
that direction must have been followed. The power of
the legislature to declare an offense, and to exclude the
elements of knowledge and due diligence from any inquiry
as to its commission, cannot, we think, be questioned.
*Regina* v. *Woodrow*, 15 Meeson & Welsby, 403, 417; *People*
v. *Snowberger*, 113 Michigan, 86; *Commonwealth* v. *Em-
mons*, 98 Massachusetts, 6, 8; *People* v. *Roby*, 52 Michigan,
577; *Edgar* v. *State*, 37 Arkansas, 219, 223; *Maryland* v.
*Baltimore & Susquehanna Steam Co.*, 13 Maryland, 181,

187, 188. In *Halsted* v. *State*, 41 N. J. L. 552, 591, the suggestion was made that in determining the mind of the legislature, the dictates of natural justice should be the ground of decision, and not simply regarded as a mere circumstance of weight. But that court said: "As there is an undoubted competency in the lawmaker to declare an act criminal, irrespective of the knowledge or motive of the doer of such act, there can be, of necessity, no judicial authority having the power to require, in the enforcement of the law, such knowledge or motive to be shown. In such instances the entire function of the court is to find out the intention of the legislature, and to enforce the law in absolute conformity to such intention." So, in Greenleaf on Evidence: "Where a statute commands that an act be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation. Thus, for example, where the law enacts the forfeiture of a ship having smuggled goods on board, and such goods are secreted on board by some of the crew, the owner and officers being alike innocently ignorant of the fact, yet the forfeiture is incurred, notwithstanding their ignorance. Such is also the case in regard to many other fiscal, police, and other laws and regulations, for the mere violation of which, irrespective of the motives or knowledge of the party, certain penalties are enacted; for the law, in these cases, seems to bind the party to know the facts and to obey the law at his peril." (3 Greenleaf, 16th ed., §§ 21, 26 and notes.)

We need say nothing more. The case is plainly covered by the act of Congress. And as it is determined by the rule announced in the *Taylor Case*, it must be held that no error of law was committed to the prejudice of the defendant, and the judgment must be affirmed.

*It is so ordered.*