LEWIS S. H. PARKER, RESPONDENT, v. ATLANTIC CITY RAILROAD COMPANY, APPELLANT.

Argued November 23, 1914—Decided March 1, 1915.

A brakeman employed by a railroad company operating a railroad engaged in interstate commerce, inserted his arm between an engine-tender and the car next back of it to make an adjustment of the couplers owing to the fact that they would not work automatically by impact, and his arm was crushed, necessitating amputation. He sued and recovered damages. *Held*, that under the "Safety Appliances act" the duty of the railroad company to provide car couplers which would couple automatically by impact was an absolute duty; and from the fact that the couplers did not so work on the given occasion, it was inferable that the company had failed to comply with the standard raised by the "Safety Appliances act," and, therefore, under the "Federal Employers' Liability act" the employe was to be held not to have been guilty of contributory negligence, nor to have assumed the risks of the employment, and the case was properly submitted to the jury.

On appeal from the Supreme Court.

For the appellant, *French & Richards.*

For the respondent, *David O. Watkins.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The plaintiff was a brakeman employed by the defendant company, admittedly operating a railroad engaged in interstate commerce in November, 1912, when he was injured while coupling an engine-tender to a

car. Owing to the fact that the couplers would not work he inserted his arm between the tender and the car next back of it, to make an adjustment, when his arm was crushed, necessitating amputation. The action was tried at the Gloucester Circuit and a verdict was rendered by the jury in favor of the plaintiff for the sum of $3,000, and the defendant appeals, specifying as grounds, the denial of motions to nonsuit and direct a verdict, and sundry alleged errors relating to the charge of the court and refusals to charge as requested.

By an act of congress of March 2d, 1893 (27 *Stat. L., p.* 531, *ch.* 196; 6 *Fed. Stat., Anno.* 753), commonly called the "Safety Appliances act," it was provided, *inter alia,* that from and after January 1st, 1898, it should be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car in moving interstate traffic not equipped with couplers coupling automatically by impact, and which cannot be uncoupled without the necessity of men going between the ends of the cars. It has been held that this provision is applicable alike to acts both of coupling and uncoupling. *Chicago, &c., R. R. Co.* v. *Voelker,* 129 *Fed. Rep.* 522, 526. It is further provided by this act that any employe of any such common carrier who may be injured by any locomotive, car or train in use contrary to this provision shall not be deemed thereby to have assumed the risk thereby occasioned.

By act of congress of April 22d, 1908 (35 *Stat. L., p.* 65, *ch.* 149; *Fed. Stat., Anno. Supp.* 1909, *p.* 584), commonly called the "Federal Employers' Liability act," it is provided, *inter alia,* that every common carrier by railroad while engaging in commerce between any of the several states shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier or by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances, &c.; that any such employe who may be injured shall not be held to have been guilty of contributory negli-

gence in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury; that in any such action such employe shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury. And by amendment of April 5th, 1910 (*Fed. Stat., Anno. Supp.* 1912, *p.* 335, *ch.* 143), it is enacted that the jurisdiction of the courts of the United States under the act shall be concurrent with that of the courts of the several states.

In *Seaboard Air Line Railway Co.* v. *Horton*, 233 *U. S.* 492, Mr. Justice Pitney, speaking for the United States Supreme Court, said (at *p.* 501) :

· "It is settled that since congress, by the act of 1908, took possession of the field of the employers' liability to employes in interstate transportation by rail, all state laws upon the subject are superseded."

Therefore the action in the case at bar was of necessity brought under and is governed by the "Federal Employers' Liability act," and also the "Safety Appliances act."

In *St. Louis and Iron Mountain Railway Co.* v. *Taylor*, 210 *U. S.* 281, Mr. Justice Moody, speaking for the United States Supreme Court in construing the Safety Appliances act, said (at *p.* 294) :

"In the case before us the liability of the defendant does not grow out of the common law duty of master to servant. The congress, not satisfied with the common law duty and its resulting liability, has prescribed and defined the duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the legislature was to supplant the qualified duty of the common law with an abso-

lute duty, deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the law making body."

The train upon which the respondent, Parker, was a brakeman was at a standstill on a slight curve at the time it was uncoupled. What is called the drawhead was out of line and it appears to have been necessary to move it so that the couplers would work. Whether it was out of line because of the position of the engine and cars on the curve it is unnecessary to say. The respondent's injury was occasioned by the fact that the tender would not couple to the car next to it, and Parker slid in between them to push the drawhead over. The tender and car would not have coupled without his having put his arm in for the purpose of manipulating the couplings. It is not an answer to say that the couplers would have worked if the car had been upon a straight track, for the Supreme Court of the United States in *Chicago, Rock Island and Pacific Railway Co. v. Brown,* 229 *U. S.* 317, observed (at *p.* 320), that it was conceded that in the Taylor case, *supra,* and in *Chicago, B. and Q. Railway Co. v. United States,* 220 *U. S.* 559, that that court settled that the failure of a coupler to work *at any time* sustained a charge of negligence in that respect, &c.

At the close of the plaintiff's case a motion for nonsuit was made on the ground that the burden was upon him to show some negligence on the part of the defendant company; that as he had not shown any such negligence, therefore, there could be no verdict against the defendant. The court reserved the motion.

At the close of the whole case, when both sides rested, a motion was made on behalf of the defendant for the direction of a verdict, it being urged by counsel for defendant that the full proof was that all the requirements of the Safety Appliances act had been complied with and that the plaintiff, without any negligence of the defendant, was injured by his own carelessness, that the danger was obvious, that he knew if he stepped in between the moving locomotive and the car he was bound to be injured unless he stopped the engine from coming back by giving the engineer the signal to stop, and there being no evidence that the Safety Appliances act had not been complied with, the question of obvious danger and risk was a defence, and that the plaintiff by his negligence contributed to the accident, and therefore could not recover. The trial judge refused the motion to direct a verdict, and submitted the case to the jury who returned a verdict for the plaintiff as stated.

It is unnecessary to review the evidence to ascertain whether, as asserted by defendant's counsel, there was any testimony that the Safety Appliances act had not been complied with, but that on the contrary, the full proof showed that it had been, because the United States Supreme Court in *St. Louis and Iron Mountain Railway Co.* v. *Taylor* and *Chicago, B. and Q. Railway Co.* v. *United States, supra,* held, that the duty imposed upon an interstate railroad company, in the matter of safety appliances, is an absolute duty to provide cars with couplers which will couple automatically by impact, a duty which the company cannot escape by showing that it exercised reasonable care in equipping its cars with the required safety appliances or used due diligence to keep them in repair through proper inspection. That the couplers actually did not work automatically by impact in the case at bar raised at least a presumption that the defendant company had not provided the couplers required by the Safety Appliances act, and that presented a question for the jury.

Nor was the company entitled to the direction of a verdict upon the ground that the plaintiff might have prevented the

injury had he acted otherwise than he did by going between the cars to shove the drawhead over so that the coupling could be effected, because, in that situation some judgment was necessary, and whether he should have selected some other mode of action or have refrained from acting in the emergency that confronted him, is at least debatable and raised a question for the jury. This rule is laid down by the United States Supreme Court in *Chicago, Rock Island and Pacific Railway Co.* v. *Brown, supra,* wherein it was held that a switchman reaching in between slowly moving cars to remove a coupling pin after repeated unsuccessful attempts to operate the automatic coupler is not, as a matter of law, guilty of such contributory negligence as defeats his right to recover for the resulting injuries, because he did not anticipate that his foot might slip and catch as it did in an unblocked guard rail of which he had, or could be charged with, knowledge.

Besides arguing that the trial judge erred in refusing the the motions to nonsuit and direct a verdict, it was contended on behalf of the appellant that he also erred in charging the jury in several particulars and refusing to charge as requested in several others. This phase of the case was argued only in a general way by appellant's counsel, as being involved in the law and the facts of the case and we have not been pointed to anything specifically sustaining the appellant's contentions in this regard. We have, however, examined these matters and find no prejudicial error with respect to them.

Finding no error in the record in the court below, the judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, WILLIAMS, JJ. 14.

*For reversal*—None.