### UNITED STATES v. BALTIMORE & O. R. CO.

**No. 7236 Civil Action.**

United States District Court,
W. D. Pennsylvania.

June 11, 1951.

W. Wendell Stanton, Asst. U.S. Atty., Pittsburgh, Pa., James O. Tolbert, Interstate Commerce Commission, Washington, D. C., for plaintiff.

Vincent M. Casey, of Casey, Power & Savage, Pittsburgh, Pa., George C. Doering, Baltimore, Md., for defendant.

GOURLEY, Chief Judge.

This is a proceeding by the United States of America against The Baltimore and Ohio Railroad Company to recover penalties for alleged violation of Section 2 of the Federal Safety Appliance Act, 45 U.S. C.A. § 9.

The Act, as it relates to the question before the Court, provides: "Whenever, as provided in sections 1–7 of this title, any train is operated with power or train brakes not less than 50 per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said 50 per centum shall have their brakes so used and operated; and, to more fully carry into effect the objects of said sections, the Interstate Commerce Commission may, from time to time, after full hearing, increase the minimum percentage of cars in any train required to be operated with power or train brakes which must have their brakes used and operated as aforesaid; and failure to comply with any such requirement of the said Interstate Commerce Commission shall be subject to the like penalty as failure to comply with any requirement of this section."

Under authority of the section just quoted, the Interstate Commerce Commission by order of June 6, 1910 increased this percentage to 85.

The government contends each of the four operations constituted train movements in interstate commerce.

The defendant railroad contends that each of the operations was performed solely by switching crews and constituted switching movements, rather than train movements in interstate commerce.

The sole question of law is whether the movements set forth in the four causes of action are trains requiring the use of air brakes on at least 85% of the cars, or are they mere switching operations.

## Findings of Fact

### First Cause of Action

1. The defendant is a common carrier by railroad in the State of Pennsylvania and elsewhere, and was operating said train in interstate commerce.

2. On April 7, 1948, the defendant's yard industrial engine operated by a yard crew hauled 34 freight cars, both loaded and empty, from the interchange track of the McKeesport Connecting Railroad, National Tube Company Plant, to its Demmler Yard, all at McKeesport, Pennsylvania.

3. That during said movement, the air brakes were in use and operation on the locomotive, tender and head car only; the air hose between the head car and following car was disconnected, thus rendering the air brakes on the remaining cars inoperative.

4. Said movement was made intact for a distance of 7620 feet, of which 384 feet was over side tracks and the remaining distance of 7236 feet over main-line tracks.

5. In performing this movement, the engine and all cars traversed at grade crossings, two switching tracks of the Pennsylvania Railroad, two main tracks of the Pittsburgh & Lake Erie Railroad, one main track of the defendant, and four public street grade crossings.

6. No additional cars were picked up or set out en route from the time of the commencement to the termination of said movement, and during said movement the speed of the engine and cars did not exceed six miles per hour.

7. Permission to make this movement was given by the interlocking tower operator, who also gave permission to cross the Pittsburgh and Lake Erie Railroad Company and the Pennsylvania Railroad Company tracks.

8. During said operation the defendant did not have at least 85% of the cars, which comprised said train, operating with air brakes.

9. Said movement of the train did not constitute a switching operation under the terms and provisions of the Federal Safety Appliance Act.

10. Said operation constituted a train movement in interstate commerce, which required the use of air brakes on at least 85% of the cars in said train movement.

### Second Cause of Action

1. The defendant is a common carrier by railroad in the State of Pennsylvania and elsewhere, and was operating said train in interstate commerce.

2. On April 8, 1948, the defendant's yard industrial engine operated by a yard crew hauled 23 freight cars from the tracks known as the Highland Slag Dump of the Duquesne Slag Company to the defendant's Glenwood Yard, all in the City of Pittsburgh, Pennsylvania.

3. That during said operation the air brakes were in use and operation on the locomotive, tender and first three cars only; the air hose between the third car and the following car being disconnected, thus rendering the air brakes on the remaining cars inoperative.

4. Said movement was made intact for a distance of 8484 feet, of which 600 feet was over side tracks and the remaining distance of 7884 feet over main-line tracks.

5. In performing this movement, the engine and all cars crossed three other main-line tracks of the defendant, and one private road crossing.

6. No additional cars were picked up or set out en route from the time of the commencement to the termination of said movement, and during said movement the speed of the engine and cars did not exceed six miles per hour.

7. Permission to make this movement was given by the defendant's train dispatcher.

8. During said operation the defendant did not have at least 85% of the cars, which comprised said train, operating with air brakes.

9. Said movement of the train did not constitute a switching operation under the terms and provisions of the Federal Safety Appliance Act.

10. Said operation constituted a train movement in interstate commerce, which required the use of air brakes on at least 85% of the cars in said train movement.

### Third Cause of Action

1. The defendant is a common carrier by railroad in the State of Pennsylvania and elsewhere, and was operating said train in interstate commerce.

2. On May 11, 1948, the defendant's yard industrial engine operated by a yard crew hauled 39 freight cars from a side track near the Car Shops to its South Yard, all in DuBois, Pennsylvania.

3. That during said operation the air brakes were in use and operation on the locomotive and tender only; the air hose between the tender and adjoining car being disconnected, thus rendering the air brakes on the remaining cars inoperative.

4. Said movement was made from the side track, where it entered upon the main-line track, and continued on the eastbound main-line track for 5,899 feet, then across the westbound main-line track and on a side track.

5. In performing this movement, the engine and all cars crossed four public street crossings.

6. No additional cars were picked up or set out en route from the time of the commencement to the termination of said movement, and during said movement the speed of the engine and cars did not exceed eight to ten miles per hour.

7. The main-line tracks were used by three passenger and fourteen freight trains each way daily.

8. During said operation the defendant did not have at least 85% of the cars, which comprised said train, operating with air brakes.

9. Said movement of the train did not constitute a switching operation under the terms and provisions of the Federal Safety Appliance Act.

10. Said operation constituted a train movement in interstate commerce, which required the use of air brakes on at least 85% of the cars in said train movement.

### Fourth Cause of Action

1. The defendant is a common carrier by railroad in the State of Pennsylvania and elsewhere, and was operating said train in interstate commerce.

2. On May 13, 1948, the defendant's yard industrial engine operated by a yard crew hauled 48 freight cars in a direction opposite that set forth in Finding of Fact No. 2 in the Third Cause of Action.

3. That during said operation the air brakes were not in use on any of the cars due to the air hose not being connected between the tender and adjoining car.

4. Said movement was made from the South Yard onto the westbound main-line track, backed over the crossover onto the eastbound main-line track, and into the yard near the Car Shops. The total distance traveled over main-line track was 8,719 feet, and an additional distance of about 2,000 feet over other tracks.

5. In performing this movement, the engine and all cars crossed four public street crossings.

6. No additional cars were picked up or set out en route from the time of the commencement to the termination of said movement, and during said movement the speed of the engine and cars did not exceed eight to ten miles per hour.

7. The main-line tracks were used by three passenger and fourteen freight trains each way daily.

8. During said operation the defendant did not have at least 85% of the cars, which comprised said train, operating with air brakes.

9. Said movement of the train did not constitute a switching operation under the

terms and provisions of the Federal Safety Appliance Act.

10. Said operation constituted a train movement in interstate commerce, which required the use of air brakes on at least 85% of the cars in said train movement.

## Discussion

■ The provisions of the Safety Appliance Act are absolute and mandatory. Accordingly, a strict and literal compliance therewith is required. The purpose of the statute is to promote the safety of the railroad employees and the traveling public generally. St. Louis Iron Mountain & S. R. Co. v. Taylor, 210 U.S. 281, 295, 28 S.Ct. 616, 52 L.Ed. 1061; Chicago, B. & Q. Ry. Co. v. United States, 220 U.S. 559, 31 S.Ct. 612, 55 L.Ed. 582; United States v. Elgin, J. & E. R. Co., 7 Cir., 182 F.2d 1.

Unless the engineer is able readily and quickly to check or control the train movements in a second's notice, such train is a serious menace to the safety of all mankind.

"In Webster's Dictionary the word 'train' is defined as a 'connected line of cars or carriages on a railroad.' In Detroit City Railway v. Mills, 85 Mich. 634, 48 N.W. 1007, it is stated that 'a train is a continuous or connected line of cars or carriages on a railroad.' In Dacey v. Old Colony R. R. Co., 153 Mass. 112, 26 N.E. 437, and in Caron v. Boston & A. R. Co., 164 Mass. 523, 42 N.E. 112, a train is defined to be 'a locomotive and one or more cars coupled together and run upon a railroad.' These definitions induce the belief that Congress, in enacting the Safety Appliance Act, used the word 'train' in the ordinary and not the technical sense, regardless of the varying rules and practices of carriers." United States v. Grand Trunk Ry., D.C., 203 F. 775, 776.

■ A train in the sense intended consists of an engine and cars which have been assembled and coupled together for a run or trip along the road. United States v. Erie R. Co., 237 U.S. 402, 407, 35 S.Ct. 621, 59 L.Ed. 1019.

In approaching the question as to whether the operations in the four causes of action constituted train movements or switching operations, the following circumstances do not remove train movements from the purview of the air brake provisions of the Safety Appliance Act.

■ There is nothing in the Act which limits the application of the provision here in question to operations on main-line tracks. The requirement that train brakes shall be coupled so as to be under engine control is in terms applicable to all trains used on any railroad engaged in interstate commerce. United States v. Northern Pacific Ry. Co., 254 U.S. 251, 41 S.Ct. 101, 65 L.Ed. 249.

Nor does the fact that the speed of the train is extremely slow or the distance of movement comparatively short exempt such train from the provisions of the Act. Louisville & Jeffersonville Bridge Co. v. United States, 249 U.S. 534, 39 S.Ct. 355, 63 L.Ed. 757; United States v. Northern Pac. Ry. Co., 9 Cir., 54 F.2d 573.

■ The mere fact that railroad yards belong to the same railroad and are several miles apart, although important accessories of the same terminal do not constitute one yard, and trains moving between them are subject to the Act. United States v. Erie Railroad Company, supra; United States v. Chicago, Burlington & Quincy R. Co., 237 U.S. 410, 35 S.Ct. 634, 59 L.Ed. 1023.

■ The further fact that movements are not under control of the dispatcher or the fact that the men in charge are designated as yard or switching crews has no bearing. Illinois Cent. R. Co. v. United States, 8 Cir., 14 F.2d 747.

Classification of train movement as switching operation by railroad for accounting purposes is to be given little weight, if any. United States v. South Buffalo Ry. Co., 2 Cir., 168 F.2d 948.

■ It, therefore, appears that the test does not lie only in the distance of the movement, nor in the number of cars, nor the kind of track, nor even if the work were being done by switching engines or

switching crews, but "the controlling test of the statute's application lies in the essential nature of the work done." Louisville & Jeffersonville Bridge Co. v. United States, supra; United States v. Great Northern Ry. Co., 9 Cir., 73 F.2d 736, 739; United States v. Elgin, J. & E. Ry. Co., supra.

■ The application of the Act cannot be made to depend on the taking of other than the prescribed precautions, such as providing gates and watchmen, or upon balancing the dangers involved in following its requirements against those involved in its neglect. Louisville & Jeffersonville Bridge Co. v. United States, supra.

All of the movements set forth in the instant case were clear-cut movements of trains from one designated subdivision of the general yards to another definite subdivision. They crossed other tracks and street grade crossings.

■ The operations and movements were train movements within the normal meaning of the Act interpreted in the light of practical railroad operation. Louisville & Jeffersonville Bridge Co. v. United States, supra; United States v. South Buffalo Ry. Co., supra; Illinois Cent. R. Co. v. United States, supra; Chicago & Erie R. Co. v. United States, 7 Cir., 22 F.2d 729; United States v. Northern Pacific R. Co., 9 Cir., supra; United States v. Southern Pacific Co., 9 Cir., 60 F.2d 864.

There would appear to be no valid reason why these air brakes, which were on every one of the cars involved, could not have been easily coupled, and thus put in the hands of the engineers these appliances for readily and quickly stopping these trains in case of emergency. The air brakes were put on these cars at considerable expense for this very purpose, and consideration of haste, convenience or other factors should not be allowed to interfere with the absolute requirements of law and deprive the employees of this defendant, and the employees of other carriers in these yards, as well as travelers on the public streets, the protection the statute was designed to afford.

In operating these trains without the required percentage of air brakes, this carrier violated the plain terms of the statute.

Judgment should therefore be entered for the government on all causes of action.

## Conclusions of Law

(Applicable to each of the four causes of action.)

1. Jurisdiction of the Court exists under the Acts of Congress known as the Safety Appliance Acts, 45 U.S.C.A. §§ 1 to 16, inclusive.

2. The defendant, The Baltimore & Ohio Railroad Company, is a corporation organized and doing business under the laws of the State of Maryland, and having an office and place of business at McKeesport, Pennsylvania.

3. The defendant during all the times involved in the within causes of action was a common carrier engaged in interstate commerce by railroad in the State of Pennsylvania.

4. The defendant violated the provisions of the Safety Appliance Act, as modified by an order of the Interstate Commerce Commission of June 6, 1910, which requires that whenever any train is operated with power or train brakes, not less than 85 percent of the cars of such train shall have their brakes used and operated by the engineer of the locomotive drawing such train, and all power-braked cars in every such train which are associated together with the 85 percent shall have their brakes so used and operated.

5. The defendant on April 7, 1948 operated on its line of railroad, over a part of a highway of interstate commerce, one train consisting of thirty-four cars, drawn by locomotive engine, which train was operated with power or train brakes.

6. That during said train movement in interstate commerce, only one of the cars in said train had its brakes used and operated by the engineer of the locomotive drawing said train, and when less than 85 percent of the cars which composed said train had their brakes used and operated by the engineer of said locomotive engine drawing said train.

7. In view of the violation by the defendant of the provisions of the Safety Appliance Act, the defendant is liable to the United States of America, plaintiff, in the sum of One Hundred Dollars.

8. The defendant on April 8, 1948 operated on its line of railroad, over a part of a highway of interstate commerce, one train consisting of twenty-three cars, drawn by locomotive engine, which train was operated with power or train brakes.

9. That during said train movement in interstate commerce, only three of the cars in said train had their brakes used and operated by the engineer of the locomotive drawing said train, and when less than 85 percent of the cars which composed said train had their brakes used and operated by the engineer of said locomotive engine drawing said train.

10. In view of the violation by the defendant of the provisions of the Safety Appliance Act, the defendant is liable to the United States of America, plaintiff, in the sum of One Hundred Dollars.

11. The defendant on May 11, 1948 operated on its line of railroad, over a part of a highway of interstate commerce, one train consisting of thirty-nine cars, drawn by locomotive engine, which train was operated with power or train brakes.

12. That during said train movement in interstate commerce, none of the cars in said train had their brakes used and operated by the engineer of the locomotive drawing said train, and when less than 85 percent of the cars which composed said train had their brakes used and operated by the engineer of said locomotive engine drawing said train.

13. In view of the violation by the defendant of the provisions of the Safety Appliance Act, the defendant is liable to the United States of America, plaintiff, in the sum of One Hundred Dollars.

14. The defendant on May 13, 1948 operated on its line of railroad, over a part of a highway of interstate commerce, one train consisting of forty-eight cars, drawn by locomotive engine, which train was operated with power or train brakes.

15. That during said train movement in interstate commerce, none of the cars in said train had their brakes used and operated by the engineer of the locomotive drawing said train, and when less than 85 percent of the cars which composed said train had their brakes used and operated by the engineer of said locomotive engine drawing said train.

16. In view of the violation by the defendant of the provisions of the Safety Appliance Act, the defendant is liable to the United States of America, plaintiff, in the sum of One Hundred Dollars.