FT. WORTH BELT RY. CO. v. CABELL.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 8, 1913. Rehearing Denied Dec. 13, 1913.)

1. NEGLIGENCE (§ 136*)—PROXIMATE CAUSE—JURY QUESTION.
Ordinarily, the question whether an injury should have been foreseen and was the proximate result of the negligence complained of is for the jury.
[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

2. NEGLIGENCE (§ 59*)—PROXIMATE CAUSE.
If an injury follows an act of negligence in natural sequence, and there is no intervening

agency, the wrongdoer is, as a matter of law, *held* to have had the result in contemplation.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 72; Dec. Dig. § 59.*]

3. MASTER AND SERVANT (§ 285*)—INJURIES TO SERVANT—JURY QUESTION.

In a personal injury action by a railroad brakeman, whether the employer's negligence was the proximate cause of the injury *held* under the evidence for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002, 1003, 1007, 1008, 1016, 1035. 1043, 1053; Dec. Dig. § 285.*]

4. MASTER AND SERVANT (§ 129*) — INJURIES TO SERVANT—PROXIMATE CAUSE.

Where a railroad brakeman, upon the breaking loose of cars, attempted to catch them so as to put on the brakes, and was injured by being thrown from the cars when they struck stationary ones, the fact that he left a place of safety and exposed himself to danger, that being his duty, did not break the causal connection between the negligence of the railroad company, in furnishing insufficient couplers and defective tracks, and the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

5. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL OF REQUEST COVERED BY THOSE GIVEN.

In a personal injury action, where the court fully charged on proximate cause, the refusal of a special request on that issue, which also defined remote cause, was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

6. TRIAL (§ 84*)—ACTIONS—EVIDENCE—ADMISSIBILITY.

In a personal injury action by a railroad brakeman who was thrown from wild cars, which he was attempting to stop after they had broken loose from a train, where the railroad set up contributory negligence because of his failure to jump after he saw that the cars would collide with a standing car, evidence that the parallel tracks on which other cars were standing seemed closer than was usual in railroad yards cannot be held inadmissible merely on general objection, upon the theory that it tended to show negligence not pleaded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 211–218, 220–222; Dec. Dig. § 84.*]

7. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Any error in the admission of evidence over objection was harmless, where other evidence to the same effect was received without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

8. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—ACTIONS—JURY QUESTION.

In a personal injury action by a railroad brakeman hurt when thrown from wild cars which had come uncoupled, the question of the master's negligence in furnishing insufficient couplers and in maintaining defective tracks, which caused the cars to break loose, *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

9. MASTER AND SERVANT (§ 274*)—INJURIES TO SERVANT—ACTIONS—EVIDENCE.

In a personal injury action by a railroad brakeman, where the railroad company claimed that his failure to jump from wild cars was contributory negligence, evidence that it would have been dangerous to have jumped, under the circumstances, was admissible.

[Ed. Note.—For other cases, see Master & Servant, Cent. Dig. §§ 939–949; Dec. Dig. § 274.*]

10. EVIDENCE (§ 471*)—CONCLUSIONS OF WITNESS—ADMISSIBILITY.

In a personal injury action, where it was sought to show that plaintiff was a malingerer, and the court allowed a full inquiry as to a previous injury, it was proper to exclude testimony by a physician that on one occasion he noticed plaintiff go across the street on crutches, and that they were absolutely useless as far as the assistance plaintiff was getting from them, the testimony being in the nature of a conclusion of the witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

11. EVIDENCE (§ 129*)—ADMISSIBILITY—PERSONAL INJURIES.

In a personal injury action, where there was nothing to show a settled system on the part of plaintiff of maintaining fictitious claims, an isolated instance of a fictitious claim for damages for personal injury is inadmissible to show that plaintiff was simulating his present injuries.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 388–393, 395–398; Dec. Dig. § 129.*]

12. WITNESSES (§ 410*)—CORROBORATION.

In a personal injury action, where a physician who testified to examining plaintiff at the time of an injury while working for another railroad company was contradicted by plaintiff, that contradiction was not such an impeachment as to authorize the introduction of the report by the physician as corroborative evidence.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1284; Dec. Dig. § 410.*]

13. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR—PROPOSITIONS.

In a personal injury action, where plaintiff's character had been impeached by testimony as to his poor reputation for honesty and integrity, and plaintiff testified as to why he failed to pay his debts, propositions under an assignment complaining of the admission of such testimony, which recited that in a personal injury action it is error to admit plaintiff's testimony to the effect that he was poverty-stricken, and that the introduction of immaterial and irrelevant testimony does not justify the admission, over the objection of defendant, of improper testimony to explain it, do not require consideration; being too general, and not pointing out any specific error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

14. WITNESSES (§ 358*) — EXAMINATION — CROSS-EXAMINATION.

Where impeaching witnesses are offered, to attack the reputation of one of the parties, the party assailed is entitled, on cross-examination, to compel the witness to state the source of the reports upon which he bases his testimony.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1159, 1160; Dec. Dig. § 358.*]

15. WITNESSES (§ 361*)—IMPEACHMENT—CORROBORATION.

Where impeaching testimony is offered evidence which will satisfactorily explain it is admissible, and hence, in a personal injury action, where plaintiff's character was impeached by evidence as to his bad reputation for integrity and truth, owing to his failure to pay his debts, plaintiff was entitled to testify as to

the reasons for his failure; especially where some of his reasons were elicited without objection upon the examination of other witnesses.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1167–1175; Dec. Dig. § 361.*]

16. APPEAL AND ERROR (§ 719*) — ASSIGNMENTS OF ERROR— NECESSITY.

In a personal injury action, where there was no assignment of error that the verdict, as reduced by the trial court, was excessive, a judgment for plaintiff will not be disturbed because of improper argument of counsel, which went to the amount of recovery only.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. § 719.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by G. S. Cabell against the Ft. Worth Belt Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Stephens & Miller, of Ft. Worth, for appellant. Carlock & Carlock, of Ft. Worth, for appellee.

CONNER, C. J. Appellee instituted this suit to recover damages for personal injuries, and secured a verdict and judgment for $5,000, which upon a hearing of the motion for a new trial was reduced by remittitur to $3,000.

Every step in the proceeding seems to have been skillfully and vigorously contested in behalf of appellant, but, after a careful consideration of the record, we have failed to find an error for which we think the judgment must be reversed.

As alleged and supported by testimony, appellee's injuries were received under substantially the following circumstances: Appellee at the time was in the employment of the appellant railway company as a switchman. On the day of the accident, a switch engine coupled to a string of some eight standing cars with the purpose of coupling thereto a standing car some 25 car lengths south of the cars first mentioned. Appellee, in the performance of his duty, first released the air on the cars attached to the engine, and immediately and rapidly walked in the direction of the single car to which the train was to be coupled, with the purpose of opening the "knuckle" in order to make the coupling. When within about 30 or 35 feet from the car at the south end of the yards, another switchman, Du Poyster, gave appellee a signal indicating that the cars had broken apart. Appellee, as it was his duty to do, immediately started in a run back to the uncoupled cars which had been attached to the engine, for the purpose of setting the brakes to keep them from doing damage by hitting the stationary car, or by going over a "derail" situated at the south end of the track. Appellee caught the first of the approaching cars while going at a speed, as he testified, of some 12 or 15 miles an hour, with the intention of ascending to the top and fastening the brakes. This car was provided with a "stirrup" extending below the bottom of the car above which was fastened a hand hold. The ladder provided for ascension was on the front instead of on the side, and appellee, after having gotten upon the stirrup with his left foot and with his left hand holding to the support above, threw his right hand around the corner of the car, intending to ascend the end ladder, when, as he testifies, he saw that he was so near the standing car that he did not have time to make the ascension; that it was dangerous to jump off the car upon which he was standing because of the proximity of some standing cars on a parallel track, and it was likewise dangerous for him to place himself upon the end ladder and remain there during the impending collision; that he, therefore, remained in the position stated, to wit, with his left foot in the stirrup, with his left hand on the support above, with his right hand on one of the rounds of the end ladder, and his right foot on an extending uncoupling rod; that, while in the position stated, the string of cars upon which he was situated violently collided with the standing car; that thereby his hold was broken and he was hurled forward, but managed to catch upon the standing car which he later ascended and where he was afterwards found with injuries to which he testified. As accounting for the fact that the string of cars broke loose from the switch engine, and as grounds of negligence charged to be the proximate cause of appellee's injuries, it was alleged that the string of cars to which the switch engine had been first attached were provided with automatic couplers, and that the track upon which the movements were made was in bad repair, there being low joints in the track which had a tendency to so disarrange the couplers as to allow them to part, and the defendant company was charged with negligence in maintaining both defective couplers and a defective condition of the track whereon the cars were being handled at the time.

[1-3] In several forms, it is earnestly insisted that if it be admitted, as there was evidence tending to show, that the appellant railway company was guilty of negligence in either providing defective couplers or in maintaining a defective track, yet such acts of negligence cannot be held to be the proximate cause of appellee's injuries, for the reason that such injuries were not such as, in the light of the attending circumstances, ought to have been foreseen as a natural and probable consequence of such act of omission; numerous authorities being cited in support of this contention. The doctrine of "proximate cause" has been so frequently

discussed, and is so well understood that we cannot hope to add to what has from time to time been clearly stated on the subject in the decisions. There can be no doubt of the general proposition that it is ordinarily an issue for the jury to determine whether, in any given case, an injury similar in character to that under investigation ought to have been foreseen as a result of an act of negligence established by the evidence. If the injury follows the act of negligence in natural sequence, and there is no independent, intervening cause, and the injury would not have occurred but for the act or acts of negligence shown, it, meets the requirements of the law. Under such circumstances, the wrongdoer, as a matter of law, is held to have had the result in contemplation. The court gave an approved definition of the term "proximate cause," and we think it was for the jury in this case to say whether the acts of negligence shown caused or proximately contributed to cause appellee's injuries, and whether such injuries, or some like injuries, under the attending circumstances, ought to have been foreseen. The jury's verdict on this issue was in appellee's favor, and under the evidence we do not think the verdict can be disturbed.

[4] It is true appellee was in a place of safety when he was informed of the uncoupling of the cars, but his act in thereupon attempting to ascend the approaching train was in the performance of his duty to appellant as a switchman and can in no legal sense be regarded as an independent cause which brought about appellee's injuries in the sense that it broke the causal connection between the negligence charged and the injuries received.

[5] Nor do we think the court committed error in refusing appellant's special charges 2, 3, and 4, on the subject of proximate cause, which in our judgment would have had a tendency to confuse rather than to enlighten the jury. For instance special charge No. 2 is as follows: "Even though you find and believe from the evidence that the track belonging to the defendant was [and] in use by it at the time of the occurrence of the things complained of by plaintiff in his petition herein was in defective condition by reason of low joints therein, and that by reason of such defective condition of said track the defendant was guilty of negligence, yet you cannot find for the plaintiff on that ground unless you believe and find from the evidence that such negligence was the proximate cause and not the remote cause of the injury of which plaintiff complains. In the law of negligence, a remote cause of an injury is one which does not by itself alone produce the given result, but which sets in motion another cause, called the proximate cause, which immediately brings about the given effect, or, otherwise defined, it is that which may have happened and yet no injury

have occurred, notwithstanding that no injury could have occurred if it had not happened."

The issue presented in the first paragraph of this special charge was submitted in the court's general charge under an approved definition of proximate cause which, intelligently considered, as we must presume was done, needed no illumination in the way of a definition of an opposite—a "remote cause"— which at most could only be indirectly relevant.

[6] It is urged in the sixth and seventh assignments of error that the court erred in permitting appellee, as also the witness C. P. Garey, to testify, in substance, that the parallel tracks hereinbefore mentioned "seemed closer together than tracks in railroad yards ordinarily are." On the trial appellant pleaded contributory negligence on appellee's part because of his failure, among other things, to jump off of the car upon which he attempted to ascend after he saw that it was about to collide with another, and it seems clear that, as relevant to this issue, appellee was authorized to show the distance between the parallel tracks, the distance the standing cars extended over the track, and, as he did by expert testimony, that it was hazardous to jump off of the running car in such close proximity to the cars standing on the parallel tracks. So that we could in no event sustain the single proposition under the assignments named, which is that the testimony "was immaterial and inadmissible, and the admission of such evidence constitutes reversible error."

[7] Could it be said, however, that the general objections that the "evidence was immaterial and inadmissible" were sufficiently broad to admit the contention that it tended to establish an issue of negligence not alleged, or that in no event could be a proximate cause of the injuries received, then we think the objections are answered by the fact that other evidence, of substantially the same effect, on the part of the witness W. N. Turney was offered and received without objection, this witness testifying that: "Those tracks (the parallel tracks to which the testimony objected to relates) are too close together and have always been, while I was working there." Moreover, it would seem that the unusual proximity of the tracks was part of the very situation in which appellee was placed at the time it is insisted he should have jumped from the moving train, and, perhaps, tended to explain why he failed to do as he otherwise might safely have done had the tracks been placed their usual distances apart.

[8] By objection to the testimony, and by the presentation of a special charge to the refusal of which error is assigned, appellant presented the contention that there was no evidence of a defect in the coupling of the cars. It is true that the witness who coupled

the parting cars testified that he looked at the couplings to see if there was any defect, and that he found none, but there was expert testimony, that we think competent, offered in behalf of appellee, to the effect that, with ordinary handling, cars will not part as those under consideration did unless there were defects in the track or in the couplings. It was also shown, as before stated, that there were low joints in the track, and that the particular cut of cars that were being switched broke apart at three different places before they were switched off of the main line track upon which the operation began, and we think it was for the jury to say whether, if low joints in the track were permissible, the couplers, in the exercise of due care, should have been made to extend perpendicularly such distance, or otherwise arranged so as to preclude a parting because of low joints in the track. At least the evidence seems to render it certain that the uncoupling was brought about because of a defect in either the track or the couplings, and whether one or the other would seem to be immaterial, if, as a proximate result, appellee was injured.

[9] The testimony of the witnesses named in the fifteenth to the twenty-first assignments of error, inclusive, to the effect that it would have been dangerous for appellee, under the circumstances, to have attempted either to jump off of the moving car upon which he was stationed, or to have ascended on the end ladder, was relevant to the issue of contributory negligence, and the court, therefore, committed no error in admitting this testimony.

[10] Nor do we think the court committed any error of which appellant can complain relating to its plea that appellee was a malingerer. Appellant was permitted, in support of this plea, to go rather fully into an accident and claim of injury on appellee's part during the previous year on the T. & B. V. Railway, and the mere exclusion, regardless of the sufficiency of the objection thereto, of the statement by Dr. M. L. Langford that on one occasion he noticed the plaintiff go across the street, and "noticed that, in walking with his crutches, his crutches were absolutely useless as far as the assistance plaintiff was getting from them," etc., will not authorize us we think to reverse the judgment. The answer offered partakes of the nature of a conclusion of the witness, and, as we view the record, it is not clear that the entire issue was not irrelevant.

[11] No connection whatever between the accidents was shown, nor was there evidence offered tending to show a settled course of action or system on appellee's part in the maintenance of fictitious claims, and nothing seems better settled than that, under such circumstances, an isolated transaction of the kind is inadmissible as proof that on the occasion at issue appellee was simulating his injuries.

[12] There is yet another reason for overruling appellant's claim of error in the court's rejection of the written report of an examination of appellee at the time of his injuries on the T. & B. V. Railway. Dr. A. P. Howard was permitted to testify, as a witness, that on the occasion he referred to he examined appellee and failed to find any evidence of injury, and the mere fact that appellee on the trial denied that Dr. A. P. Howard made any such examination was not such an impeachment of the witness as authorized in his corroboration the introduction of the report made by him at the time. See McKensie v. Watson, 36 Tex. Civ. App. 235, 81 S. W. 1017; Hardin v. F. W. & D. C. Ry. Co., 49 Tex. Civ. App. 184, 108 S. W. 490; Taliaferro v. Goudelock, 82 Tex. 521, 17 S. W. 792.

[13] Under appellant's twenty-fourth assignment of error, objection is urged to the action of the court in permitting appellee to give the following testimony: "Excluding one debt of $90 which is in doubt, the question of whether I owe it, I owe about $115. I am indebted to Dr. Langford and have been off and on since my child was born; I owe Jackson & Tatum $6. I owe Wilson Bros. $17 or $18, I am not positive. I owe Mr. Ira Wood $2, and I owe Hillman Bros. $8. I may owe $15 or $20 around the place there, and this W. B. Summers debt. When I opened up business down there I bought $121. The Summers debt was for furniture, and I paid on that up to the time of the fire, and have the bills to show it, and the reason why I have not met those obligations is that my wife has been constantly sick and in awful bad shape for the last two years and a half. Well, I have been crippled for seven months —this accident, and in that fire, in February last, I lost over $790, and this past February I was out of employment for two months after the fire, and I only worked four days in May when received this injury, and since then I have been unable to earn any money whatever or do anything."

It appears that appellant had offered a number of witnesses who testified to the effect that appellee's general reputation for truth and veracity and for honesty and integrity was bad in the town of Mart, where he formerly lived, and one of them, at least, on cross-examination by appellee, gave names of persons whom he had heard so state, and testified that appellee was indebted to him and, as reported, to some or all of the other persons, and that: "I think his (appellee's) reputation is bad because he won't pay his debts, and I think that any man that don't pay his honest debts is a bad man." It seems that appellee's testimony quoted above was admitted in explanation of such impeaching testimony, and the only objections thereto that we are called upon to consider by the propositions submitted under the assignment named are: First: "In a suit for damages for personal injuries, it is error to admit

plaintiff's testimony, to the effect that he is poverty-stricken and has been unfortunate in life." Second: "The introduction of immaterial and irrelevant testimony by the plaintiff does not justify the admission over objection by the defendant of improper testimony to explain it." The proposition first quoted points out no specific error and is evidently too general to require consideration. The second proposition is almost if not quite as general as the first in that it entirely fails to give any specific reason why the quoted testimony is "improper."

[14] It cannot be said that the testimony developed by appellee on cross-examination of appellant's impeaching witnesses was either immaterial or irrelevant. Oftentimes nothing short of a cross-examination which compels an impeaching witness to state both the source of the reports to which he testifies and their nature will enable a party either to test the correctness of the impeaching evidence or to protect the person assailed, and it has uniformly been held that such cross-examination is permissible.

[15] Nor can it be said that under no circumstances is evidence explanatory of impeaching testimony authorized. On the contrary, under circumstances and with limitations not necessary to here notice, such evidence is often both material and relevant. See St. L. & S. W. Ry. Co. of Tex. v. Bryson, 41 Tex. Civ. App. 245, 91 S. W. 829; Roberts v. Commonwealth, 94 Ky. 499, 22 S. W. 845; 2 Wigmore on Evidence, § 112; Annis v. People, 13 Mich. 517. So that we feel unable to sustain as made the objections to appellee's testimony now under consideration. Moreover, other testimony of like general import was admitted, without objection on appellant's part. That appellee's wife was an invalid was testified to by Dr. Langford without objection and the wife, herself, also appeared as a witness and testified to her condition. Evidence was admitted without objection that the plaintiff's business was burned up in February, 1912, and that he had been out of employment up until a little while before he got hurt, thus raising an inference of an inability to pay his debts and hence of an origin for his ill repute that was without moral turpitude. In view of all which, we think the twenty-fourth assignment of error must be overruled.

[16] The only remaining assignments relate to certain arguments on the part of appellee's counsel in his closing address to the jury, and to an alleged excessiveness in the verdict and judgment. As to these assignments, we think it sufficient to say that, in the case of at least two of the arguments, the court in answer to appellant's objection expressly instructed the jury to disregard them. The remaining argument, as to which the jury were not so instructed, as indeed all of the arguments, went not to the issue of liability, but to the amount of the recov-

ery only and, inasmuch as no assignment raises the question of an excess in the verdict and judgment after the action of the court in requiring a remittitur, we think the assignments relating to the argument as well as that alleging an excess in the verdict should at all events be now overruled.

We conclude by stating, as before, that a careful examination of the record discloses no error for which we think the judgment should be reversed, and, believing that the evidence supports the material issues alleged and submitted, it is ordered that the judgment be affirmed.