ELLA J. MONTGOMERY, ADMINISTRATRIX, v. CAROLINA AND N. W. RAILROAD COMPANY.

(Filed 26 November, 1913.)

**Railroads — Safe Appliances — Automatic Couplers—Negligence—Trials—Nonsuit.**

It is the duty of a railroad company to equip its cars with automatic couplers and to keep them in proper repair, and in an action to recover for the wrongful death of an employee who was caught between the cars and killed while engaged in coupling the cars, the failure of these couplers to work automatically on that occasion so as to require this act of the intestate, is sufficient evidence of negligence of the defendant to take the case to the jury, and a judgment as of nonsuit should not be granted; and this rule applies to actions brought under our decisions as well as under the Federal statutes known as the Safety Appliance Act.

APPEAL by plaintiff from *Webb, J.,* at August Term, 1913, of CALDWELL.

*Mark Squires, J. W. Whisnant, Thomas Newland, M. N. Harshaw, and Murray Allen for plaintiff.*

*W. C. Newland, J. H. Marion, and O. F. Mason for defendant.*

CLARK, C. J. This is an action for wrongful death, caused by the negligence of the defendant. The plaintiff alleges negligence in providing incompetent and untrustworthy coemployees and their failure to operate the train in a proper manner. But the negligence chiefly relied upon is in the failure to provide

automatic couplers that were in proper condition, and that those used on the car in question were so defective and out of order that they failed to couple automatically by impact, as required by law, so that it became necessary for plaintiff's intestate to go between the cars for the purpose of adjusting the couplers.

The evidence was that the train had just arrived at the station, the engineer had gone to his dinner, and the fireman who had been left in charge of the engine had formerly been discharged for drunkenness. The cab had been detached from the train and left near the station. · The train of cars was then run backwards and forwards, switching. The conductor instructed the employee to couple up to the caboose, and then went back into the office at the station. Upon the first effort to couple up the cab, the coupling failed and the cab was knocked back some distance. The deceased then stepped in to fix the pins, and signed the train back, and on the second impact the cab again failed to make the coupling. The plaintiff's intestate then again stepped in to adjust the coupling, when the cab rolled down upon him while he was endeavoring to adjust the coupling, and crushed him to death. The testimony on these points is uncontradicted. It would be a reasonable inference from the evidence that when the cab rolled down the third time it was in a third attempt to make the coupling. Or it may have been because the cab was itself not under sufficient control by negligence of employees or some defect in roadway.

We have, then, in this case a coupler so defective that it missed making connection twice, and in the third attempt it killed the plaintiff's intestate. This is sufficient evidence to go to the jury that the coupler was defective. The act of Congress requires automatic couplers that are in good condition. To furnish one that was as defective as this is not even a colorable compliance with the law.

Under the Federal statute it is held: "Under the Safety Appliance Act the failure of a coupler to act any time sustains the charge of negligence on the part of the carrier." *R. R. v. Brown,* 229 U. S., 317, citing *R. R. v. U. S.,* 220 U. S., 559.

In *Nichols v. R. R.,* 195 Federal, 517, it is said: "The rule eliminating all questions of due care and requiring at all events that the apparatus shall be in working order, repeated and unsuccessful efforts to make the lever operate are some evidence that it was not in the condition required by the statute."

In *Willett v. R. R.,* 142 N. W., 883, the Supreme Court of Minnesota said: "This Court has held that the Federal Safety Appliance Act imposes upon railroads engaged in moving interstate traffic the absolute duty to equip their cars with couplers that will, at all times, when operated in an ordinary and reasonable manner, couple upon impact." And it was further said that this duty was not discharged by merely equipping the car with automatic couplers, without using due diligence to keep them in good working order. *Delk v. R. R.,* 220 U. S., 580; *R. R. v. U. S., ib.,* 559.

In *Burho v. R. R.,* 141 N. W., 302 (Minn.), the Court said: "If a coupler fails to work when an honest and reasonable effort is made to operate it, under circumstances and in the manner it is designed to be operated, we conclude that the law is not complied with."

The United States Safety Appliance Act provides that it is unlawful to use "any car in moving interstate commerce not equipped with couplers, coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars." This act covers coupling as well as uncoupling. *R. R. v. Voelker,* 129 N. E. Fed., 527 (opinion by *Van Devanter, C. J.,* now on U. S. Supreme Court); *Johnson v. R. R.,* 196 U. S., 18, in which *Fuller, C. J.,* states the history of the act and on p. 19 says: "The risk of coupling and uncoupling was the evil sought to be remedied, and that risk was to be obviated by the use of couplers actually coupling automatically."

In *R. R. v. Brown,* 229 U. S., p. 321 (decided 10 June, 1913), the Court said it is "settled that the failure of a coupler to work at any time sustains a charge of negligence in this respect, no matter how slight the pull on the coupling lever."

To same effect, Thornton on Safety Appliances, 584 and 588, Note 20, L. R. A. (N. S.), 474, and cases cited. Proof that a

coupler will not couple automatically by impact makes out a *prima facie* case sufficient to go to the jury, and if there are extenuating facts they must be shown by the defendant." *R. R. v. Poole,* 175 Ind., 567.

It is unnecessary to consider whether under the facts of this case the action is to be tried under the provisions of the Federal statute, or under the State law. If tried under the Federal Employee's Liability Act, contributory negligence is not a defense, but is to be considered in reduction of damages merely. *Horton v. R. R.,* 157 N. C., 146; *Burho v. R. R.,* 141 N. W., 300; *Johnson v. R. R.,* 178 Fed., 643. Assumption of risk is in express terms abolished by the United States Safety Appliance Act. *Schlemmer v. R. R.,* 220 U. S., 588.

It is alleged in paragraph 3 of complaint that the defendant was engaged as a common carrier in interstate commerce, and this is admitted in paragraph 2 of the answer. If, however, as the defendant contends, this case is to be considered as an injury occurring in intrastate commerce, the law is precisely the same. It was held by this Court, first of all the courts of the Union, in *Greenlee v. R. R.,* 122 N. C., 977; 41 L. R. A., 399; 65 Am. St., 734, and in *Troxler v. R. R.,* 124 N. C., 191; 44 L. R. A., 313; 70 Am. St., 580, and in the many cases affirming the doctrine there laid down, that the failure of a railroad company to have self-coupling devices on its cars is a continuing negligence, and in an action for injury sustained by failure to do so, contributory negligence is no defense. In *Elmore v. R. R.,* 132 N. C., 865, the Court held the failure on the part of a railroad company to keep automatic couplers in good condition and repair is negligence, as much so as if the cars had never been equipped with such couplers. In the opinion in that case, which was the third time it was before this Court, the subject was fully discussed and the conclusion then reached has ever since been adhered to. See citations in the Anno. Ed.

The facts in the *Elmore case* were almost identical with those in the present case.

The judgment of nonsuit must be

Reversed.