[Civil No. 1333.  Filed April 3, 1914.]

[139 Pac. 782.]

LUCIA GUANA, Administratrix of the Estate of MANUEL GUANA, Deceased, Appellant, v. SOUTHERN PACIFIC COMPANY, a Corporation, Appellee.

1. MASTER AND SERVANT—DEATH OF SERVANT—ASSUMPTION OF RISK—FEDERAL EMPLOYERS' LIABILITY ACT.—Where a complaint demanding damages under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. Stats. Supp. 1911, p. 1322]), for the death of a railroad employee does not allege any violation by the railroad company of any safety law for the protection of employees, the employee assumed those risks under the common law not abrogated by the act.

2. MASTER AND SERVANT—DEATH OF SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY.—An employee engaged in caring for and assisting in moving engines in a roundhouse was killed while assisting in moving a wide engine by coming in contact with a post near the

track. He did his work in the way he was accustomed to 'do on narrower engines passing the post in safety. The engine was operated in the usual manner. The accident happened at night, and the roundhouse was not provided with artificial lights. *Held,* that the employee did not, as a matter of law, assume the risk resulting from the use, without his knowledge, of a wider engine and his inability to discover the danger by reason of the failure to provide artificial lights, though he assumed all the risks incident to working without artificial lights so long as he worked on the narrower engines with which he was familiar.

[As to doctrine of assumption of risk in law of master and servant, see note in 97 Am. St. Rep. 884.]

APPEAL from a judgment of the Superior Court of the County of Pima. W. F. Cooper, Judge. Reversed.

### STATEMENT OF FACTS BY THE COURT.

The appellant, who was plaintiff below, prosecutes this appeal from a final judgment sustaining a demurrer to her complaint, on the ground that it failed to state facts sufficient to constitute a cause of action. It is an action by her as administratrix for damages for the death of her husband, Manuel Guana, who is alleged to have been killed on March 10, 1910, through the negligence of the appellee railroad company, for which deceased was working at the time of his death. The material parts of the complaint are set forth in the following allegations:

"VI. That, at the time of his death, the said Manuel Guana was, and for about two months prior thereto had been, in the employ of the defendant at its said roundhouse at Benson, Arizona, and that the duties of his employment were to clean and care for the engines of defendant, and occasionally to assist in running them in and out of said roundhouse and to and from the main track of the defendant, and to assist generally in all work in and about the roundhouse and yard of the defendant at said Benson, and that, in the performance of such duties, it became and was necessary and proper for the said Manuel Guana to get upon and off the engines of the defendant while the same were being run into and out of said roundhouse.

"VII. That said Manuel Guana was an illiterate Mexican, aged about twenty-six years; that he was inexperienced in the

line of work in which he was engaged at the time of his death; that he was not aware of the risks and hazards of said occupation, and did not know or appreciate the dangers incident thereto, as the defendant and its agents and servants well knew.

"VIII. That during the time of his employment, the greater portion of the time of the said Manuel Guana was occupied inside the roundhouse cleaning and wiping engines, and only occasionally was he required to assist in running them from the roundhouse to the main track of defendant; that, at the time of his death, said Manuel Guana was engaged in assisting the hostler in taking a certain engine from the roundhouse to the main track; that said engine was wider than the other engines which said Manuel Guana was accustomed to work, all of which was unknown to him; that the said roundhouse was constructed with large posts used to support the roof of said roundhouse, between which said posts were the tracks leading into said roundhouse, and which were used for running the engines in and out of said roundhouse; that said posts were so placed that they would clear a man getting on or off an engine of the ordinary size and width, but would not clear a man getting on or off an engine of the size and width of the one upon which said Manuel Guana was working at the time he met his death, all of which was unknown to said Manuel Guana; that said defendant carelessly and negligently maintained said posts too near to said tracks, as aforesaid, and carelessly and negligently failed and neglected to remove the same or to place them at a safe distance from said tracks, and knowingly suffered the said posts to remain in such dangerous position.

"IX. That on the tenth day of March, 1910, the said Manuel Guana was in the employ of said defendant at its roundhouse, as aforesaid, and that about the hour of 4 o'clock A. M., while it was still dark, it then and there became and was the duty of the said Manuel Guana to assist another employee of defendant, known as a hostler, in backing or moving a certain engine of the defendant out of said roundhouse, for the purpose of placing said engine upon the main track of defendant preparatory to attaching said engine to one of defendant's trains to be run over its railroad; that said engine was wider than the ordinary engine, as aforesaid; and that

some of the posts supporting the roof of said roundhouse were too close to the tracks, as aforesaid; that while so engaged, as aforesaid, said Manuel Guana was struck by one of the posts so placed close to the track, which, on account of darkness and the fact that no lights were maintained, was not observed by said Manuel Guana; and that he sustained injuries from which he, on the last-named date, died.

"X. That at the time said injuries were received by the said Manuel Guana, resulting in his death as aforesaid, the said engine was being backed or run out of said roundhouse by a certain employee of said defendant, known as a hostler, who was then and there engaged in operating said engine and backing or moving the same out of said roundhouse; that said hostler then and there well knew, or by the exercise of ordinary care and prudence could and should have known that said Manuel Guana was then and there at work on said engine and getting on and off thereof, in the performance of the duties of his employment, and that said engine was larger than the ordinary engine, and that said Manuel Guana was in danger of being struck by the said post so maintained in dangerous proximity to said tracks over which said engine was then and there running, and that, in getting off said engine while the same was in motion, said Manuel Guana was in danger of being struck by said post and injured thereby; but nevertheless the said hostler continued to back and move said engine, and, while said engine was so being moved and while in motion, said Manuel Guana was struck by said post, and received injuries from which he died, as aforesaid.

"XI. That said Manuel Guana received the said injuries which resulted in his death, as aforesaid, by reason of the negligence and carelessness of said defendant in maintaining and keeping the said post too close to said track, so that said Manuel Guana could not perform his duties without danger of injury while said engine was being backed out of said roundhouse, and by reason of the carelessness and negligence of said hostler in backing said engine out of said roundhouse and keeping said engine in motion when said Manuel Guana was getting on or off said engine, which said hostler knew or ought to have known that said Manuel Guana was in danger of being struck by said post and of being killed or injured thereby, and because of the negligence and carelessness of the

defendant in maintaining the dangerous conditions in and about said roundhouse without providing any lights in the night-time.''

Mr. A. A. Worsley, Mr. Wm. M. Lovell and Mr. Benton Dick, for Appellant.

Mr. Frank Cox and Mr. Francis M. Hartman, for Appellee.

ROSS, J.—Does the complaint state facts sufficient to constitute a cause of action? At the time Manuel Guana was killed, Arizona was a territory, and, in answering the above question, we must be guided by the terms of the federal Employers' Liability Act of April 22, 1908, chapter 149, 35 Stat. 65, Federal Statutes, Annotated, Supplement of 1909, page 584 (U. S. Comp. Stats. Supp. 1911, p. 1323). The portions of that act having a bearing on this case are as follows:

''Sec. 2. (Damages for Injuries in Territories, District of Columbia, Canal Zone, etc.) That every common carrier by railroad in the territories, the District of Columbia, the Panama Canal Zone, or other possessions of the United States shall be liable in damages to any person suffering injury while he is employed by such carrier in any of said jurisdictions, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

''Sec. 3. (Contributory Negligence of Employee.) That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of

negligence attributable to such employee: Provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

"Sec. 4.   (Assumption of Risk of Employment.)   That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

It will be seen that by section 2, in the territories, the District of Columbia, the Panama Canal Zone, and other possessions of the United States, the fellow-servant doctrine of the common law is abrogated and a liability upon the part of common carriers by railroad is created when injury or death results to an employee from the negligence of any of its officers, agents, or employees, or by reason of any defects or insufficiency, due to negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.   Section 3 abrogates the·common-law doctrine of contributory negligence, and substitutes therefor what is known as comparative negligence, and authorizes the jury to gauge the amount of damages in accordance with the degree of negligence of the employee, diminishing it as the employee's negligence increases.   Section 4 retains the common-law doctrine of assumed risk, except where the injury or death is occasioned in whole or in part by a violation of some law by the employer enacted for the safety of employees.

The complaint does not allege any violation by defendant of any safety law enacted for the protection of employees, and it follows that plaintiff assumed those risks under the common law that have not been abrogated by this act.   *Freeman* v. *Powell* (Tex. Civ. App.), 144 S. W. 1033; *Barker* v. *Kansas City, M. & O. Ry. Co.*, 88 Kan. 767, 43 L. R. A., N. S., 1121, 129 Pac. 1151.

The complaint is based upon three acts of negligence, as we read it: (1) A failure on the part of defendant to furnish a

safe place and appliances; (2) a failure to furnish lights; and (3) negligence of a fellow-servant.

Our analysis of the complaint, and, upon the demurrer, its allegations must be taken as true, satisfies us that the proximate cause of the accident that resulted in the death of Manuel Guana was the introduction into his work, without his knowledge, of a new element of danger in the wider engine, and that the failure to provide artificial lights lessened his ability or opportunity to discover a danger that, with lights, might have been easily seen and avoided. It seems that the engine was being operated in the usual manner, and that the deceased, at the time of his injury, was performing his ordinary duties in the accustomed way. The accident did not occur because of the negligent movement of the engine, nor because of any negligent omission or commission of deceased, but solely by reason of the wider engine occupying more of the space between the upright posts and leaving too little space for deceased to do his work as he had been doing it on the narrower engines. The deceased might have been prevented, because of the darkness, from discerning that the particular engine was wider than the others upon which he had been working, or the difference in width might not have been so pronounced as to attract his attention, or his visual conception might have been defective. We cannot say, as a question of law, the new element of danger interjected by the wider engine was "so patent as to be readily observed" by deceased. A most cautious person might have been lulled into a feeling of security from having repeatedly made the same trip with apparently the same means without injury.

Under the rule that the employee assumes all the ordinary risks of his employment, it may be said the deceased assumed the risks incident to working without artificial lights, so long as the instruments with which he labored remained the same, or so long as he was fully advised of any alterations or changes that enhanced his danger. A servant does not assume extraordinary or unusual risks of his employment. 26 Cyc. 1177; Labatt's Master and Servant, 2d ed., sec. 1187. The last author says, at section 1180: "Most of the cases in which the servant's nonassumption of extraordinary risks is asserted relate to injuries by dangerous conditions which arise from or are incident to the intrinsic quality or the permanent

arrangement and relative disposition of the instrumentalities of the business or the materials which the servant is required to handle.''

The case of *Choctaw etc. R. R. Co.* v. *McDade,* 191 U. S. 64, 48 L. Ed. 96, 24 Sup. Ct. Rep. 24, in its essential features, bears enough resemblance to this case to make the principles therein announced applicable here. McDade, a brakeman, was struck by an overhanging iron pipe of a water tank and knocked from the top of a moving train and killed. The court said: ''It is the duty of a railroad company to use due care to provide . . . properly constructed roadbed, structures, and track to be used in the operation of the road. *Union Pacific Ry. Co.* v. *O'Brien,* 161 U. S. 451 [40 L. Ed. 766, 16 Sup. Ct. Rep. 618]. The spout might readily have been so constructed and hung as to be safe. As it was maintained, it was a constant menace to the lives and limbs of employees whose duties required them, by night and day, to pass the structure. It is a case where the dangerous structure is not justified by the necessity of the situation, and we agree with the judgments in the courts below that its maintenance under the circumstances was negligence upon the part of the railroad company. . . . The servant assumes the risk of dangers incident to the business of the master, but not of the latter's negligence. *Hough* v. *Railway Co.,* 100 U. S. 213 [25 L. Ed. 612]; *Wabash Ry. Co.* v. *McDaniels,* 107 U. S. 454 [27 L. Ed. 605, 2 Sup. Ct. Rep. 932]; *N. P. R. R. Co.* v. *Herbert,* 116 U. S. 642 [29 L. Ed. 755, 6 Sup. Ct. Rep. 590]; *N. P. R. R. Co.* v. *Babcock,* 154 U. S. 190 [38 L. Ed. 958, 14 Sup. Ct. Rep. 978]. The question of assumption of risk is quite apart from that of contributory negligence. The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. The employee is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. This rule is subject to the exception that, where a defect is known to the employee, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the

hazard incident to such a situation. In other words, if he knows of a defect, or it is so plainly observable that he may be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master, notwithstanding the defect, and in such case cannot recover.''

While there may be cases in which it becomes the duty of the court to decide upon demurrer that the employee assumed the risks as pleaded, we do not think this is that kind of a case.

The judgment is reversed and case remanded, with directions to overrule demurrer.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

NOTE.—As to servant's assumption of risk of danger imperfectly appreciated, see note in 4 L. R. A., N. S., 990. And for servant's assumption of risk from latent danger or defect, see note in 17 L. R. A., N. S., 76.