[Civil No. 1715. Filed March 22, 1920.]

[188 Pac. 268.]

# SOUTHERN PACIFIC COMPANY, a Corporation, Appellant, v. JOHN J. THOMAS, as Administrator of the Estate of CHARLES H. THOMAS, Deceased, Appellee.

1. MASTER AND SERVANT—FEDERAL ACT REQUIRING AUTOMATIC COUPLERS IMPOSES ABSOLUTE DUTY.—The federal Safety Appliance Act (U. S. Comp. Stats., §§ 8605–8612), requiring automatic couplers, imposes an absolute duty, which cannot be evaded or excused by proof that the carrier has used ordinary care in the selection of proper couplers or reasonable diligence in using them and ascertaining their condition from time to time.

2. EVIDENCE—STATEMENT BY BRAKEMAN WHEN BEING REMOVED FROM PLACE OF ACCIDENT ADMISSIBLE AS RES GESTAE.—Statements by a brakeman, who was crushed between cars when couplers had separated, where made when he was being removed from the ground, and which related to the cause of the accident, are admissible as part of the *res gestae*.

3. APPEAL AND ERROR—VERDICT ON CONFLICTING EVIDENCE WILL NOT BE DISTURBED.—Where there was evidence to support the verdict it will not be disturbed by the appellate court because of conflicts in the evidence.

4. MASTER AND SERVANT—UNDER FEDERAL ACT FAILURE OF AUTOMATIC COUPLER TO WORK SUPPORTS CHARGE OF NEGLIGENCE.—Under the federal Safety Appliance Act (U. S. Comp. Stats., §§ 8605–8612) the failure of an automatic coupler to work will support a charge of negligence against the carrier.

5. MASTER AND SERVANT—VIOLATION OF FEDERAL ACT NEGLIGENCE PER SE.—An interstate carrier's violation of the federal Safety Appliance Act (U. S. Comp. Stats., §§ 8605–8612) is negligence *per se*.

6. MASTER AND SERVANT—RISK FROM VIOLATION OF FEDERAL SAFETY ACT NOT ASSUMED.—Under U. S. Comp. Stats., §8660, a railroad employee does not assume the risk resulting from failure to comply with the federal Safety Appliance Act (U. S. Comp. Stats., §§ 8605–8612).

7. MASTER AND SERVANT—EMPLOYEE HAS BURDEN OF SHOWING THAT ABSENCE OF EQUIPMENT REQUIRED BY FEDERAL ACT WAS PROXIMATE CAUSE OF INJURY.—A railroad employee, injured by a car not properly equipped with automatic couplers required by the federal Safety Appliance Act (U. S. Comp. Stats., §§ 8605–8612), has the

burden of showing that the failure to comply with the act was the proximate cause of the injury.

8. MASTER AND SERVANT—WHETHER FAILURE TO COMPLY WITH FEDERAL SAFETY APPLIANCE ACT WAS PROXIMATE CAUSE OF INJURY IS QUESTION FOR JURY.—Whether the failure to equip cars with automatic couplers, required by the federal Safety Appliance Act (U. S. Comp. Stats., §§ 8605–8612), was the proximate cause of an injury is a question for the jury.

9. NEGLIGENCE—PROXIMATE CAUSE DEFINED.—If injury follows negligence as a natural consequence, and there are no intervening causes, and the injury would not have occurred but for the negligence shown, such negligence is deemed the proximate cause, and the wrongdoer is deemed to have had the result in contemplation.

10. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE NO DEFENSE UNDER FEDERAL ACT.—Where the carrier failed to have proper couplers on cars, as required by the federal Safety Appliance Act (U. S. Comp. Stats., §§ 8605–8612), the brakeman's contributory negligence in going between parting cars without giving the proper signal is no defense under U. S. Comp. Stats., § 8659.

11. MASTER AND SERVANT—FAILURE TO COMPLY WITH FEDERAL SAFETY APPLIANCE ACT SHOWN TO BE PROXIMATE CAUSE OF INJURY.— In an action for the death of a brakeman crushed between cars, into which position of peril he had gone when the couplers separated, held that the evidence warranted a finding that the failure to supply automatic couplers, required by the federal Safety Appliance Act (U. S. Comp. Stats., §§ 8605–8612), was the proximate cause of the accident.

APPEAL from a judgment of the Superior Court of the County of Pima. Samuel L. Pattee, Judge. Affirmed.

STATEMENT OF FACTS.

Action by the administrator of the estate of Charles H. Thomas, deceased, to enforce the liability of the carrier, given the estate of decedent under the federal employers' liability law (U. S. Comp. Stats., §§ 8657–8665; 8 Fed. Stats. Ann., 2d ed., pp. 1208–1378) for the use and benefit of the father. The deceased was an employee of the Southern Pacific Company, occupied as a head brakeman on a train engaged in moving interstate commerce. About dark, on the twelfth day of December, 1916, the deceased was crushed be-

tween the couplers of a loaded flat car and a box-car. He placed himself between the cars at the break in the train two cars back of the engine, and the engine backed, catching and crushing the deceased.

The trainmen found deceased after the injury, and while on the ground, waiting to be placed aboard the train, deceased stated that he (deceased) turned off the angle-cock, closing the train air line. When asked, "How did it happen?" referring to the accident, "he said he saw those drawbars come by, come apart, and he went to go through, and he thought that I [engineer] wanted to slack off ahead, was his understanding. He said: 'It was a mistake. I thought you wanted to slack off ahead.' And he said, "I was too slow going by, and when you went to come back, why, it got me going through there.' "

On cross-examination, the engineer added that the deceased stated to the fireman "that he was too slow going through there when he saw those knuckles separate, those couplings separate, and he said 'I thought they wanted to cut in two to pull ahead.' "

The injured man died on December 13, 1916, before he reached the hospital at Tucson.

The record contains much testimony of trainmen, experts in handling train equipment, compressed air and automatic couplers and other appliances used and required by law to be used in train service and on trains of the kind here operated and engaged in interstate commerce.

The controverted facts on the trial raised the inquiry as to how the train became separated, whether from defective or insufficient couplers, or whether the cars were uncoupled by someone, perhaps the deceased.

The court submitted the following special interrogations to the jury. to which answers were returned by the jury, as indicated:

"Were the couplers on either of the cars mentioned in the plaintiff's complaint defective, as alleged by the plaintiff? Ans. Yes.

"Int. Did the train break in two? Ans. Yes.

"Int. Did plaintiff's decedent, Chas. H. Thomas, uncouple the cars himself? Ans. No."

The jury also found a general verdict for the plaintiff. The court suggested a reduction of the amount of the verdict returned, to which the plaintiff acceded, and remitted a portion of the verdict returned. Whereupon judgment was rendered and entered for the plaintiff. The defendant appeals.

Mr. Francis M. Hartman, for Appellant.

Messrs. Richey & Richey, for Appellee.

CUNNINGHAM, C. J. (After Stating the Facts as Above.)—The appellant contends that the evidence, undisputed and uncontroverted, "showed conclusively and overwhelmingly that the two couplers were not defective." If the appellant's contention is sound, then the special verdicts, in the form of answers to the three interrogations submitted to and answered by the jury, are not sustained by the evidence, and the general verdict is wrong. The defendant is not liable unless it has failed to use due care for the employee's safety, in the particular of providing couplers on its cars free from defects.

The Supreme Court of the United States considered the scope and effect of the Safety Appliance Act of Congress (U. S. Comp. Stats., §§ 8605–8612; 27 Fed. Stats. Ann., 2d ed., pp. 531, 532), and it directly and expressly decided that the provision in the second section, relating to automatic couplers, imposed an absolute duty on each carrier corporation in every case to provide the required couplers on cars used in interstate traffic. *St. Louis, I. M. & S. R. Co. v. Taylor,*

210 U. S. 281, 52 L. Ed. 1061, 28 Sup. Ct. Rep. 616 (see also, Rose's U. S. Notes). The decision in the Taylor case is so construed in the *Chicago, B. & Q. R. R.* v. *United States,* 220 U. S. 559, 575, 55 L. Ed. 582–588, 31 Sup. Ct. Rep. 612, 616. The court continues:

"It also decided that nonperformance of that duty could not be evaded or excused by proof that the corporation had used ordinary care in the selection of proper couplers or reasonable diligence in using them and ascertaining their condition from time to time. That the Taylor case, as decided by this court, has been so interpreted and acted upon by the federal courts generally is entirely clear, as appears from the cases cited in the margin." See marginal notations, 55 L. Ed. 588.

We cannot escape the conclusion that the couplers on the box-car and the gondola-car, between which the deceased was crushed, were defective, if they failed to hold the cars together, and became uncoupled while the train was moving, from any cause other than from human agency. The deceased stated to the first man who reached him after the accident that the cars had become uncoupled. He is the only person who was in the position to know that fact, so far as the record discloses. He states that the cars had become detached, uncoupled and he had gone between the cars to close the air valves before the air line should separate. While he was engaged in so doing, the engine was run backward, and he was caught and crushed. This evidence was admitted as a part of the *res gestae,* and is sufficient to justify the jury in finding as facts the answers to the three interrogatories, viz., that the couplers were defective; that the train broke in two; that decedent did not uncouple the cars.

The testimony of the expert trainmen as to the experiments they tried and their opinions after experimenting with and examining the couplers after the acci-

dent is evidence justifying a conclusion of a contrary nature. However, as the jury believed the statement made by the deceased as the fact, and disbelieved the expert witnesses' opinion as to how the train became uncoupled, we shall enforce the rule of noninterference with the verdict merely because the evidence is conflicting.

The finding of the jury, based on the evidence referred to, *supra,* showed that the couplers were in such defective condition that they failed to perform their function of holding the coupling. The couplers failed to perform the work for which they were intended. "A 'failure of a coupler to work at any time sustains a charge of negligence.'" *Noel* v. *Quincy, O. & K. C. R. Co.* (Mo. App.), 182 S. W. 787, citing *Chicago, R. I. & Pac. Ry. Co.* v. *Brown,* 229 U. S. 317, 57 L. Ed. 1204, 33 Sup. Ct. Rep. 840; *Chicago, B. & Q. Ry. Co.* v. *United States,* 220 U. S. 559, 55 L. Ed. 582, 31 Sup. Ct. Rep. 612; *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 210 U. S. 281, 52 L. Ed. 1061, 28 Sup. Ct. Rep. 616 (see also, Rose's U. S. Notes). It is an absolute duty of the carrier to keep the couplers in an operative condition. *United States* v. *Atchison, T. & S. F. Ry.,* 163 Fed. 517, 90 C. C. A. 327; *St. Louis, I. M. & S. Ry.* v. *Taylor, supra; Chicago, B. & Q. Ry. Co.* v. *United States, supra; Noel* v. *Quincy O. & K. C. R. Co., supra.* In the last case the court said:

"The rule, as stated in these three decisions, like our statement above, is that the absolute duty of the railroad does not end with the mere installation of the appliance."

The operative condition of the couplers involved in this case was not maintained, so that they would remain coupled during the haul of the train, and hence the Safety Appliance Act was violated.

The appellant's contention that there is no evidence tending to prove negligence on the part of defendant

is therefore untrue, as a violation of the safety appliance statutes in moving interstate commerce is negligence *per se* under the authorities and under the employers' liability law (Act Cong. April 22, 1908) and amendments, as such act has been repeatedly construed. *Winkler* v. *Philadelphia etc. R. Co.*, 4 Penne. (Del.) 80, 53 Atl. 90, affirmed 4 Penne. (Del.) 387, 56 Atl. 112; *Voelker* v. *Chicago, M. & St. P. R. R. Co.* (C. C.), 116 Fed. 867; *Southern R. R. Co.* v. *Carson*, 194 U. S. 136, 48 L. Ed. 907, 24 Sup. Ct. Rep. 609; *Montgomery* v. *Carolina & N. W. R. Co.*, 163 N. C. 597, 80 S. E. 83.

The appellant further contends that—

There is ''no evidence tending to prove that defendant was liable under the terms of the act of Congress known as the federal Employers' Act.''

''(b) That the evidence showed that plaintiff's intestate had assumed the risk of the injuries.

''(c) That under the evidence the cause of the accident to the plaintiff's intestate was a matter of conjecture.''

It is clear that if the appellant failed to have the two cars in use, between which the decedent was caught and killed, properly equipped with sufficient couplers while moving them in interstate commerce, it was guilty of negligence, and as a matter of law the deceased did not assume the risk (section 8660, Comp. Stats. U. S.; 8 Fed. Stats. Ann., 2d ed., p. 1352) of the injuries suffered by him, because the servant never assumes the risk of the master's negligence. If such failure of the carrier to so equip such cars contributed to the injury or death of such employee, the assumption of risk of the servant is abolished. Section 8660, Comp. Stats.; 8 Fed. Stats. Ann., 2d ed., p. 1352, *supra; Seaboard Air Line R. Co.* v. *Horton*, 233 U. S. 492, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635, in effect recognized by this

court in *Guana* v. *Southern Pacific Co.,* 15 Ariz. 413, L. R. A. 1916D, 1206, 139 Pac. 782.

The appellant's contention that the evidence fails to bring the case under the federal liability law, and leaves the cause of the accident a matter of conjecture, seems to be intended to question the sufficiency of the proof of the proximate cause of the injury.

"In order to enable an employee to recover when he has been injured by a car not properly equipped with automatic couplers, such improper equipment, or the absence of an automatic coupler, must have been the proximate cause of his injury; and he has the burden to show that such was the fact." Thornton on Federal Safety Appliance Act, § 219, p. 348, citing cases.

The question whether the defective coupler was the proximate cause of the servant's injury must be submitted to the jury. *Erie R. Co.* v. *Russell,* 183 Fed. 722, 106 C. C. A. 160.

If the injury follows the negligence in natural sequence, and there is no independent intervening cause, and the injury would not have occurred but for the act of negligence shown, it meets the requirements of the law, and is the proximate cause—the wrongdoer, as a matter of law, is held to have had the result in contemplation. *Ft. Worth B. Ry. Co.* v. *Cabell* (Tex. Civ. App.), 161 S. W. 1083.

The evidence given by the deceased immediately after he was crushed between the cars of the uncoupled train is the only testimony setting forth the circumstances immediately transpiring at the place and moment of the injury. He stated that the cars were uncoupled, and he went between them to close the air line by closing the angle-cocks on the cars; that he closed them, but he was not quick enough in passing between the cars in doing so, and was caught

and crushed; that it was a mistake he made. The evidence is that the engineer received no signal from the deceased, indicating the intention of deceased to go between the cars. One witness, Mr. Owen, the conductor, testified as follows:

"Q. Now, Mr. Owen, supposing that brakeman saw that the cars and the drawbars were drawing apart, that they had become uncoupled, and that the air hose was stretching out and apt to break, what would be his duty? A. Close the angle-cock.

"Q. And the work of closing the angle-cock on the head car would prevail then also? A. Yes, sir.

"Q. And then what would be his duty immediately after closing this angle-cock? A. Close the second one—

"Mr. Hartman: Wouldn't it also be his duty to signal the engineer not to back up—to stop or something? A. Yes, sir. . . .

"Q. And would it be his duty to go in and close the angle-cock in a case of that kind without first notifying the engineer or somebody in charge so that he wouldn't be hurt? A. Yes, sir.

"Q. He would first have to notify the engineer? A. A man would have to squeeze in there to close the angle-cock on the other side if he couldn't reach.

"Q. But I say, if he saw the train coming apart, breaking in two, in other words, . . . his first duty would be to notify the engineer to stop or not to back it up while he was going in there? A. Yes, sir.

"Q. If he couldn't see the engineer and the engineer couldn't see him, . . . it wouldn't be his duty to go in there, would it? A. No, sir."

From page 31, Reporter's Transcript.

Hence, the deceased was performing his duty as a brakeman on defendant's railroad when he went between the cars to close the angle-cocks on the air line. The conductor in his testimony makes this plain. True, the same witness states that the brakeman must first signal the engineer before he goes between the cars. Common prudence would require him to do so.

His failure to give the proper signal and notice of going between the parting cars is a failure to exercise ordinary care for his safety. Under the common-law rule, such failure is contributory negligence, and would bar a recovery for damages. The rule is otherwise under the federal liability law, if the carrier has failed to observe the safety appliance statute and has used in its train moving interstate commerce cars having couplers which contributed to the injury, in such case the employee's contributory negligence is immaterial and no defense. Section 8659, Comp. Stats. U. S.; 8 Fed. Stats. Ann., 2d ed., p. 1339 (35 Stat. 66); *Seaboard Air Line Ry. Co.* v. *Horton,* 233 U. S. 492, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635; *Great Northern Ry. Co.* v. *Otos,* 239 U. S. 349, 60 L. Ed. 322, 36 Sup. Ct. Rep. 124; *Lake Shore & M. S. R. Co.* v. *Benson,* 41 L. R. A. (N. S.) 49, note; *Grand Trunk Western R. Co.* v. *Lindsay,* 233 U. S. 42, Ann. Cas. 1914C, 168, 58 L. Ed. 838, 34 Sup. Ct. Rep. 581. The failure of the deceased to signal the engineer, while negligence on his part, was nevertheless an act which did not have the effect of intervening, and break the connection between the defendant's negligence—failure to have operative couplers on the two cars—and the proximate result of such negligence.

The appellant complains, in its assignments of error, of instructions requested and refused, and of instructions given. It is not profitable to discuss in detail all of these assignments. The important questions raised by the appellant have been disposed of above. The court gave instructions as favorable to the defendant as the law and the facts warranted, and in some instances the instructions given were more favorable to the defendant than was warranted by the law and the facts.

Upon the whole case carefully considered, I am of the opinion the court committed no reversible error, and the judgment must be affirmed.

ROSS and BAKER, JJ., concur.